[Crim. No. 15383. Second Dist., Div. One. July 9, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RANDY RAY INMAN, Defendant and Appellant.

Edward I. Gritz for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert J. Polis, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of murder in the first degree.

In an information filed in Los Angeles on December 28, 1967, Glen Leroy Deffenbaugh and Randy Ray Inman (hereafter sometimes referred to as defendant or appellant) were charged with murdering Frank Pesqueira on December 6, 1967. Upon motion of the People the causes were severed for trial. Inman went to trial before a jury and was found guilty of murder in the first degree. As to the penalty all parties waived a jury trial, and it was stipulated that the court could determine the issue of the penalty on the evidence previously received in the case. The court determined that the penalty be life imprisonment. Probation was denied and Inman was sentenced to the state prison for the term "of his natural life." A timely notice of appeal was filed.

A résumé of some of the facts is as follows: at about 2 a.m. on December 6, 1967, James Plemmons, the bartender at Pete Pogi's Bar on Washington Boulevard in Culver City was peparing to close the place. Frank Pesqueira, Pamela Meyer and James Dudley were preparing to leave the establishment. Pesqueira said, "Goodnight" and walked toward the front door. Plemmons turned toward the cash register and Meyer watched Pesqueira walk to the door. Pesqueira passed through a curtain, placed his hand on the door and stepped back to open it. There was a commotion and a gunshot was heard. Pesqueira fell back through the open door and dropped to the floor. Deffenbaugh, a thin man of medium height, with a hood on his head and a gun in his hand stated, "Everybody lay down, this is a hold-up " Plemmons, Meyer and Dudley each saw Inman, a heavy-set person wearing a white mask step into the doorway and stop at the curtains. As Deffenbaugh forced one of the customers to the floor, Plemmons reached for a gun at the cash register and started to shoot at Deffenbaugh. The bartender fired five shots at Deffenbaugh and apparently hit him twice. Deffenbaugh went out of the establishment in a crawling fashion. Plemmons went to the front door, saw Pesqueira who was dead from a gunshot wound which had punctured his heart and right lung.

Officers Dalven and Brann were in a patrol car and heard gun fire: they proceeded westerly on Washington Boulevard where they saw a man running in a westerly direction from the Pogi bar followed by another man whom they saw coming out of the bar. One of the men was wearing a dark jacket and had dark hair. Dalven saw one of the men run down Washington Boulevard and turn south onto Grandview Street. The officers called over the police radio for police assistance and an ambulance as they drove to Grandview Street where they got out of the police car. Brann walked a short distance down Grandview Street and checked some vehicles and looked between the houses. Brann then saw a man come from between some of the houses along a fence. He was walking in a stooped-over position near some bushes about 3 feet in height. From a distance of about 50 feet Brann called out: ''Police Officer; come out of there with your hands up or I will shoot.'' The statement was repeated and then a shot was fired into the air. Other officers arrived and Inman was pulled from out of the bushes. He was wearing a dark blue jacket and levis but no shirt. Inman is about 5 feet 10 inches tall and weighs between 180 and 190 pounds. He was arrested and advised and warned of his constitutional rights by Dalven. Inman apparently understood his rights. He was handcuffed and walked to the police car. After he was placed in the patrol car he voluntarily and freely conversed with Dalven for about five minutes.

Officer George saw Inman in custody while he was still near the bushes and then saw a part of a white T-shirt within a few feet of where Inman had been. The T-shirt material had been knotted and had a hole in it. A second part of a T-shirt with a knot in it and two holes was found in an alleyway west of Grandview approximately 200 yards from Togi's bar. Inman denied ownership of any part of the T-shirt.

Officer Cameron with Officer Ross on the day of the murder talked to Inman for about 45 minutes at about 3 a.m. in the Culver City Police Department interrogation room. This talk was tape-recorded and was played to the jury. A second conversation was had at about 1:15 p.m. of the same day and that talk which lasted about 30 to 45 minutes also was tape-recorded and played to the jury. Inman was advised of his constitutional rights at the 3 a.m. talk but not at the 1:15 p.m. conversation.

Adolph Thulin, who resided near the area in question, stated that at about 2:30 a.m. on the day of the murder his grandson, Deffenbaugh, came to his door; that Deffenbaugh

had blood on his arm and a .22 caliber gun in his hand. The gun was later put under a bed. Thulin gave the police permission to remove the gun and they did so at about 5:15 a.m. of the morning of the crime.

Defendant testified that Deffenbaugh was his brother-in-law and that early in the morning of December 5th he saw the butt-end of a pistol in Deffenbaugh's pocket. Further, that later on they consumed some beer together; that while on the way toward Pogi's bar Deffenbaugh asked defendant for his T-shirt. Deffenbaugh announced that he was going to rob the bar. He ripped Inman's shirt into two pieces and put holes in each piece. Inman stated that he did not want to rob the bar, that he had taken a piece of the T-shirt and had stood in the doorway area of the bar with no hood on; that he then had heard shots and had put the T-shirt to his face and had run away. Further that when he saw the police he had jumped into the bushes.

 Appellant now asserts that the interrogations after the arrest in the police car and in the jail were in violation of his constitutional rights and the admission of the statements made constituted prejudicial error and that the evidence without such statements was insufficient to support the judgment.

There is no merit to the appellant's contentions. The appellant never testified that he was not advised of his constitutional rights and the officers did testify that on the police interrogation and the 3 a.m. talk the appellant was fully advised of his rights. The appellant gave ample indication that he understood his rights. In the police car appellant stated that he had been in a pool hall for about ten minutes before the murder, that he was walking home and heard some gunshots, that he saw somebody running from the bar and felt they were after him so he ran and hid in the bushes. There was no objection made to the admission of the testimony or to the transcripts of the tapes. In fact there was a stipulation that the transcripts accurately reflected the contents of the tapes. Appellant cannot question the propriety of admitting such evidence for the reason, among others, that it was received without objection. Appellant seems to argue in effect too that he was intoxicated and did not knowingly and intelligently waive his rights. The court here found that appellant was fully capable of waiving his rights in an intelligent and knowing way, in spite of any claim of intoxication.

We think it is clear that all of the statements were properly

before the court. True it is that appellant was not again advised of his rights at the 1:15 p.m. interrogation but he had no right requiring that he be readvised every time a questioning took place. (See *People* v. *Sievers,* 255 Cal.App.2d 34, 38 [62 Cal.Rptr. 841].) ■■ Or as stated in *People* v. *Johnson,* 70 Cal.2d 541, 558 [75 Cal.Rptr. 401, 450 P.2d 865] :

"Once the defendant has been informed of his rights, and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them."

■■ "The question of a knowing and intelligent waiver of the right to counsel is predominantly a question for the trial court, and its determination will not be disturbed on appeal unless it is 'palpably erroneous.' [Citations.]

"The determination by the trial court of this question adversely to the defendants is amply supported by the evidence." (*People* v. *Fuller,* 268 Cal.App.2d 844, 854 [74 Cal.Rptr. 488].)

Appellant also seemingly asserts that by virtue of the admission of the transcripts of the tapes he was practically forced to testify in his own behalf. Under the circumstances there is no merit to the contention.

■■ However even though the statements had not been admitted the evidence is ample to support the judgment. It is clear that appellant and Deffenbaugh were engaged in a robbery and one of the two shot and killed an innocent bystander.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.