[Crim. No. 10921. First Dist., Div. One. Oct. 30, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER DANIEL WINGO, Defendant and Appellant.

## COUNSEL

Kenneth J. Adelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from the judgment upon his conviction of attempted burglary. (Pen. Code, § 664.)

His first contention is that the trial court erred in giving the following instruction: "The intent with which an act is done is shown by the circumstances attending the act, the manner in which it is done, the means used,

and the soundness of mind and discretion of the person committing the act. [¶] For purposes of the case on trial, *you must assume that the defendant was of sound mind at the time of his alleged conduct* which, it is charged, constituted the crime described in the Information." (Italics added.) Defendant urges that this instruction improperly stated to the jury the effect of intoxication upon his ability to form a specific intent.

In order to place the propriety of this instruction in proper perspective we set out the trial court's instruction which was given immediately after the complained-of instruction. This instruction read as follows: "In the crime of attempted burglary of which the defendant is accused, a necessary element is the existence in the mind of the defendant of the specific intent to commit burglary which includes the intent to commit a theft. [¶] If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such specific intent. [¶] If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent, you must give the defendant the benefit of that doubt and find that he did not have such specific intent."

■ Where specific intent is a necessary element of the crime the court must instruct, on its own motion, that in determining the existence of such intent the jury may take into consideration the fact that the accused was intoxicated at the time he committed the act in question if there is evidentiary basis for this instruction. (*People* v. *Baker,* 42 Cal.2d 550, 572-573 [268 P.2d 705]; *People* v. *Foster,* 19 Cal.App.3d 649, 654-656 [97 Cal. Rptr. 94]; *People* v. *Houghton,* 212 Cal.App.2d 864, 868 [28 Cal.Rptr. 351]; see Pen. Code, § 22.) ■ In the instant case the trial court apparently deemed that there was evidentiary basis for such an instruction since it gave an instruction as to the relevancy of voluntary intoxication to specific intent.[1]

Since the trial court was required to instruct the jury to consider whether defendant was intoxicated at the time of the alleged offense and that if he was it should consider his state of intoxication in determining if defendant had the specific intent to commit the offense, it should not have instructed the jury that defendant was of sound mind at the time of his alleged conduct which, it was charged, constituted the crime charged in the infor-

[1]The incident leading to the instant charge occurred on January 18, 1972, at about 2 a.m. Defendant's wife testified that he had been drinking during the day on January 17; his mother testified that on the same day at about 6 p.m. defendant's breath smelled of wine, his eyes were glassy, he talked strangely, that by 10 p.m. he was drunk, and that he continued to drink wine until midnight. The arresting officers acknowledged the presence of an odor of alcoholic breath when he was apprehended.

mation. Such an instruction, when read in conjunction with that which followed, could have the potential of leaving the jury in a state of confusion. (See *People* v. *Ford,* 60 Cal.2d 772, 796 [36 Cal.Rptr. 620, 388 P.2d 892] [cert. den. 377 U.S. 940 (12 L.Ed.2d 303, 84 S.Ct. 1342)].)

▇ A single sentence, as the one in question, may or may not be confusing. Whether it is confusing depends upon the context in which it lies. (*People* v. *Rhodes,* 21 Cal.App.3d 10, 21 [98 Cal.Rptr. 249].) Error cannot be predicated upon an isolated phrase, sentence or excerpt from the instructions since the correctness of an instruction is to be determined in its relation to the other instructions and in the light of the instructions as a whole. (*People* v. *Rhodes, supra; People* v. *Hunter,* 146 Cal.App.2d 64, 67 [303 P.2d 356].) Accordingly, whether a jury has been correctly instructed is not to be determined from a part of an instruction or one particular instruction, but from the entire charge of the court. (*People* v. *Rhodes, supra; People* v. *Hunter, supra.*) ▇ We here observe that in the present case the trial court instructed the jurors that they were not to single out any certain sentence or any individual point or instruction and ignore the others and that they were to consider all the instructions as a whole and to regard each in the light of all the others.

In the instant case the jurors could obtain a correct concept of the law applicable to specific intent and of the effect of voluntary intoxication on such intent from all the instructions given on the subject. Under the instructions that were given to the jurors they would understand that if the evidence showed defendant was intoxicated, such intoxication could negate specific intent to commit the crime charged. A reading of the two instructions under scrutiny discloses a meaning to the effect that the jurors were to assume that defendant was of sound mind at the time of his alleged conduct unless they concluded from the evidence that he was then intoxicated, and that if they found he was intoxicated they were to determine whether such intoxication prevented defendant from entertaining the specific intent to commit the crime charged. Accordingly, we cannot say that the giving of the "sound mind" instruction as a prelude to the "intoxication" instruction could have caused the jurors to become confused to the extent that we would now be required to say that, as a matter of law, it constituted prejudicial error.

In *Rhodes* the trial judge gave an instruction containing the first sentence of Penal Code section 22, i.e., that " 'No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.' " (21 Cal.App.3d at p. 21, fn. 7.) The jury was also instructed that " 'intoxication produced by alcohol, drugs or nar-

cotics could negate the specific intent required for robbery.' " (At p. 20.) These instructions were held not to be confusing. (At pp. 21-22.) Similarly, in *People* v. *Asher,* 273 Cal.App.2d 876, 902-903 [78 Cal.Rptr. 885], we held that a jury could not be confused by the reading of the first sentence of Penal Code section 22 in connection with other instructions emphasizing and reiterating that intoxication could occasion diminished capacity which would negate the existence of the requisite mental state for either robbery or murder. (See also *People* v. *Conley,* 268 Cal.App.2d 47, 53 [73 Cal. Rptr. 673].) The rationale of these cases is upon analogy·applicable to the instant case.

■ Defendant contends that the trial court erred in overruling his objection that three prior convictions would be inadmissible for purposes of impeachment. Defendant was convicted of burglary in 1959, of inter-state transportation of a vehicle in 1961, and of burglary in 1966. The trial court overruled his objection and indicated that it would permit the intro-duction of these prior offenses into evidence for purposes of impeachment. (See Evid. Code, § 787.) Defendant did not take the stand in his defense.[2] Accordingly, the prior offenses were not alluded to in the jury's presence. The gist of defendant's assignment of error is that the court erred in its ruling in that the prior offenses were inadmissible under the standards set forth in *People* v. *Beagle,* 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. Specifically, he contends that the convictions were too remote in time and involved conduct similar to that charged in the instant case and would therefore prejudice him with the jury if disclosed. He asserts, in essence, that he was deprived of due process because the effect of the trial court's ruling was to discourage him from testifying and thus deprived the jury of the benefit of his version of the case, particularly with respect to his main defense of intoxication negating his ability to entertain the specific intent to commit the crime charged.

In *Beagle* the Supreme Court emphasized that there were no rigid stand-ards to govern that which in each instance depends upon the exercise of the judicial discretion given to trial judges by virtue of section 352 of the Evi-dence Code. That statute provides that a trial judge has discretion to ex-clude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice. (6 Cal.3d at pp. 452-453.)

---

[2]Defendant took the stand only during the *voir dire*, out of the presence of the jury, going to the circumstances attendant the giving of the *Miranda* v. *Arizona* (384 U.S. 436 [16 L.Ed.2d 694, 865 S.Ct. 1602, 10 A.L.R.3d 974]) warning.

■ Among the factors that a trial judge may consider in determining whether to exclude evidence of prior convictions is the bearing such conviction has on veracity, the nearness or remoteness of the prior conviction, and the similarity in conduct of that involved in the prior conviction and that for which the accused is on trial. (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453; *Gordon* v. *United States,* 383 F.2d 936, 940-941 [127 App.D.C. 343] [cert. den. 390 U.S. 1029 (20 L.Ed.2d 287, 88 S.Ct. 1421)].)

■ The general rule is that felony convictions bearing on veracity are admissible. (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453.) Accordingly, acts of deceit, fraud, cheating or stealing are regarded as conduct reflecting on a man's honesty and integrity and acts of violence are not generally considered to have direct bearing on honesty and veracity. (*Gordon* v. *United States, supra,* 383 F.2d 936, 940-941; *People* v. *Beagle, supra,* at p. 453.) ■ Under this standard defendant's prior convictions would be deemed to be convictions for conduct reflecting adversely on a man's honesty and integrity.

Adverting to the element of remoteness, the applicable standard indicates that a prior conviction, even though one involving conduct reflecting on a man's honesty and integrity, ought to be excluded if it occurred long before the occurrence of the conduct for which the accused is on trial and the accused has followed a legally blameless life following the prior conviction. (*Gordon* v. *United States, supra,* 383 F.2d 936, 940-941; *People* v. *Beagle, supra,* 6 Cal.3d 441, 453.) In the present case the instant conduct occurred on January 18, 1972. In point of time the 1959 and 1961 convictions may be said to be remote, yet the repetitive criminal conduct at the 1961 and 1966 intervals is indicative that defendant did not lead a legally blameless life.

We next consider the similarity of the crimes underlying the previous convictions. Two of the previous convictions were for the same crime as that involved in the instant charge. As stated in *Gordon,* "strong reasons arise for excluding those [convictions] which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" (383 F.2d 936, 940-941; *People* v. *Beagle, supra,* 6 Cal.3d 441, 453.) An important consideration is that a defendant may not want to testify out of fear of being prejudiced because of impeachment by prior convictions and thus the jury will not have the benefit of the defendant's version of the case. (*Gordon* v. *United States, supra,* at pp. 940-941; *People* v. *Beagle, supra.*)

In *People* v. *Delgado,* 32 Cal.App.3d 242 [108 Cal.Rptr. 399],[3] it was recently held that there was no abuse of discretion in denying the defendant's motion to bar evidence of prior convictions of assault with intent to rape and forcible rape for purposes of impeachment where the defendant was charged with assault with intent to rape, assault by means likely to produce great bodily injury, attempted forcible rape, and oral copulation. In that case on the date of trial, prior to selection of the jury, the defendant admitted the prior convictions and moved for a ruling that the prosecution not be permitted to show the prior convictions for impeachment purposes should defendant take the stand. The motion was denied and was never renewed. The case proceeded to jury trial and defendant was found guilty on all counts. At the trial the defendant did not take the stand. His defense was alibi and consisted entirely of the testimony of the defendant's wife.

In holding that the trial court did not abuse its discretion the reviewing court, in *Delgado,* concluded that it could not be said as a matter of law, under the circumstances presented, that the probative value of the defendant's admitted prior convictions was substantially outweighed by the probability that their admissibility would create substantial evidence of undue prejudice. (32 Cal.App.3d at p. 251.) The rationale for this conclusion was that "on the basis of the information before it at the time it made its ruling, the trial court had a rational basis for believing the 'degree of materiality' and 'degree of necessity' constituents of probative value were great; that the 'degree of relevancy' constituent, while not great, was not nonexistent; and thus, that the prior convictions had substantial probative value." (At p. 250.)

The thrust of *Delgado* is that the procedure there employed approached the form of "blackmail" decried in *Beagle* where the court made the following statement: "We do not propose to encourage or countenance a form of blackmail by defendants." (6 Cal.3d at p. 453.) *Delgado* points out that the defendant, who indicated he would not testify if the court's ruling was adverse, made no offer of proof as to what his testimony would be; that he improperly insisted on an immediate pretrial ruling; that he never renewed the motion; and that by employing this "unacceptable procedure" the defendant was thus able to present his alibi defense through the testimony of his wife and preserve the adverse ruling as an issue on appeal. (32 Cal. App.3d at pp. 250-251.)

*Delgado* points out, further, that since the trial court is in no position to make an informed determination prior to hearing the People's evidence, the

[3]No petition for a hearing by the Supreme Court was filed.

motion to exclude evidence of prior convictions for impeachment purposes should be at the close of the People's case in chief or thereafter before the defendant takes the stand to testify. (32 Cal.App.3d at p. 252.) It is suggested in *Delgado* that since the burden of showing undue prejudice and the need for the defendant's testimony in the ascertainment of the truth is on the defendant, the defendant, in meeting this burden, should testify to his version of the facts in an in-camera hearing or, in the alternative, make an offer of proof outside the presence of the jury as to what his testimony would be. (32 Cal.App.3d at pp. 252-253.)

In the instant case the circumstances are substantially the same as those in *Delgado,* excepting that defendant did not indicate to the court that if the ruling was adverse he would not testify in his own defense. We observe that unlike *Delgado,* where the prior crimes were essentially crimes of violence, the prior crimes in the instant case were of a type that have a bearing on veracity. We observe, too, that in the present case the defense was diminished capacity and that such defense was presented through defendant's wife and mother. We also note that the subject motion was made prior to the selection of the jury and was never renewed.

It is significant to note that a reviewing court cannot make a determination as to whether there was undue prejudice and a need for the defendant's testimony unless there was some showing in the court below what that testimony would be. In the absence of such a showing we cannot say that the trial court abused its discretion in admitting evidence of the prior convictions for purposes of impeachment. In the present case defendant indicates for the first time on appeal what his testimony would have been if he had testified. As observed in *Beagle,* "A reviewing court . . . should always give careful consideration to an exercise of a trial court's discretion in both the ruling and *the timeliness of its ruling* on the admissibility of the prior convictions." (6 Cal.3d at p. 454; italics added.) The rationale of *Delgado* is applicable to the present case. Accordingly, we hold that under the circumstances presented in the instant case the trial court did not err in admitting evidence of the prior convictions for purposes of impeachment.

■ The next claim of error is predicated upon the delivery of two written instructions to the jury after it had retired to deliberate. The jurors had requested the rereading of instructions regarding voluntary abandonment. The trial judge ordered delivery of the two written instructions to the jury instead of calling them back for the purpose of rereading the instructions. Defendant's counsel objected to this procedure on the ground that the written instructions would be accorded disproportionate weight by the jury.

The two instructions read as follows:

"If a person intends to commit a crime but, before he commits any act toward the ultimate commission of the crime, he freely and voluntarily abandons his original intent and makes no effort to accomplish it, the crime of attempt has not been committed."

"If a person has once committed acts which constitute an attempt to commit a crime, he cannot avoid responsibility by not proceeding further with his intent to commit the crime, either by reason of voluntarily abandoning his purpose or because he was prevented or interfered with in completing the crime."

A trial judge may cause copies of the instructions given by him to be delivered to the jurors at the time they are given (Pen. Code, § 1093, subd. 6), and the jurors may take such instructions with them when they retire for deliberation. (Pen. Code, § 1137.) These statutes have reference to *all* of the instructions given since to permit only certain of the instructions given to be taken into the jury room would place undue emphasis on such instructions. (See *People* v. *Lyons,* 47 Cal.2d 311, 320-323 [303 P.2d 329].) In the instant situation, however, we perceive no prejudice. Not only were the instructions balanced, i.e., one was prodefendant and the other proprosecution, but both comprised instructions which had been previously orally given to the jury on the subject of its query. Had the jury returned to the courtroom for a rereading of the requested instructions these instructions would have been reread to them. Under the circumstances there would not be an overemphasis since the jury itself had requested that they be reread.

■ We next consider the contention respecting the admission of an incriminating statement made by defendant. At the time of his arrest defendant was advised of the constitutional rights articulated in *Miranda* (384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). He was asked whether he wished to waive those rights and talk about the incident. Defendant indicated that he did not want to talk about the incident. Later, while he was being transported from the hospital to the county jail he asked the officers: "Do you know what I could get for this?" This statement was admitted in evidence over defendant's objection.

*Miranda* does not prohibit the admission of statements made subsequent to the *Miranda* warnings which are voluntarily initiated by the suspect. (*People* v. *Fioritto,* 68 Cal.2d 714, 719 [68 Cal.Rptr. 817, 441 P.2d 625]; *People* v. *Brockman,* 2 Cal.App.3d 1002, 1007-1008 [83 Cal.Rptr. 70].) The determination whether a statement was made after a suspect had in-

dicated a desire to remain silent or whether it was volunteered by the suspect is one of fact for the trial judge. (*People* v. *Brockman, supra,* at p. 1008; *People* v. *Inman,* 274 Cal.App.2d 704, 708 [79 Cal.Rptr. 290]; *People* v. *Brashier,* 271 Cal.App.2d 298, 304 [76 Cal.Rptr. 581]; *People* v. *Duran,* 269 Cal.App.2d 112, 116 [74 Cal.Rptr. 459]; *People* v. *Stafford,* 240 Cal. App.2d 422, 424 [49 Cal.Rptr. 598].) Such a determination will not be disturbed by an appellate court unless it is palpably erroneous. (*People* v. *Brockman, supra; People* v. *Inman, supra; People* v. *Duran, supra; People* v. *Stafford, supra.*) In the instant case we may not disturb the trial judge's determination since it does not appear to us to be erroneous.

Defendant on his own behalf contends that the prosecutor's conduct with the jury constituted "illegal manipulation." He also complains of the prosecutor's conduct with the witness Destefano, asserting it as "brutality and weak testimony of officer Destefano." He fails to indicate the alleged "illegal manipulation." A review of the record fails to reveal any basis for this allegation or of any misconduct on the part of the prosecution with respect to Destefano.

In his supplemental brief defendant indicates he was denied effective assistance of counsel in three particulars: that the public defender failed to challenge the discrepancies in the probation report at the probation hearing and his failure to provide defendant with a copy of this report; that the public defender refused to challenge the issue of excessive force at the time of his arrest; and that the public defender refused to assist defendant in filing assault and theft charges against the arresting officers.

With respect to the latter two instances of alleged dereliction on the part of the public defender, we do not perceive that the public defender was under any obligation to pursue these matters in the course of properly defending his client. As to the first alleged instance of ineffective representation, we observe that the public defender advised the court that defendant had called to his attention that there were some minor inconsistencies in defendant's statement reported in the probation report but that he was not going into these inconsistencies in the interest of urging that defendant be granted probation because defendant had abandoned any intent to commit a burglary by his having left the restaurant roof of his own free will. He also pointed out that if defendant were sent to the state prison his wife would file for a dissolution of the marriage. Defendant does not point out the alleged discrepancies in the report. It cannot be said, under the circumstances, that defendant's counsel reduced the probation hearing to a farce or a sham by his election to appeal to the trial court's sympathies rather than challenging the "minor inconsistencies" in the probation report. (See

*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) We do not perceive, moreover, that effective representation required that defendant be provided with a copy of the report since the record discloses that defendant was aware of its contents.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 27, 1973.