[No. B087782. Second Dist., Div. Seven. May 22, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
FABIAN KAINZRANTS, Defendant and Appellant.

**COUNSEL**

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—This appeal is from a final judgment of conviction finding appellant guilty of first degree murder with robbery as a special circumstance, of attempted second degree robbery, and of assault with a firearm. Appellant argues his conviction of first degree murder and the robbery special circumstance ought to be reversed, because the trial court erroneously instructed the jury on the provocative act doctrine. He also argues evidence was insufficient to support the first degree murder conviction, and the felony-murder special circumstance was applied erroneously in this case. We affirm.

### FACTS AND PROCEEDINGS BELOW

On June 4, 1992, Anthony Bell and his fiancée, La Keisha Reeves, were hosting a birthday party for Bell's son. In attendance were several adults and children, including Moses and La Donna Wheelock and Terril Riley. At approximately 9:15 p.m., the children were inside the house watching television, while the adults were outside on the porch.

Three individuals came out of the alley adjacent to Bell's house. Appellant, one of the three individuals, walked toward Bell, while the other two remained in the area of the alley. He asked Bell, "What's up?"

Bell replied, "Who are you?"

Appellant turned away from Bell and then turned back. He pointed a Mac 11 submachine gun directly at Bell. The other two individuals who remained near the alley were armed as well.

"This is a robbery," appellant announced, and ordered everybody into the house.

Bell moved into the apartment first, then quickly locked the door behind him. Appellant responded to this move by grabbing Bell's fiancée, Reeves, by the neck with his forearm and holding the weapon to her head. Bell, in the meantime, ran to his bedroom, picked up his .9-millimeter handgun, and loaded an ammunition clip into the weapon.

From inside the house Bell heard appellant shout he would kill Reeves if Bell did not come out. Bell told himself he would have to kill appellant first. So he opened the front door to the apartment and started shooting straight ahead. Bell managed to wound appellant, but a bullet from his weapon also hit Reeves in the head and killed her instantly. Another of Bell's shots injured Mrs. Wheelock. Appellant's gun jammed, so he was unable to return fire, and ran away.

The jury found appellant guilty on count 1 of first degree murder in violation of Penal Code section 187, subdivision (a),[1] with the special circumstance of engagement in the commission of the crime of robbery within the meaning of section 190.2, subdivision (a)(17). On count 2, appellant was found guilty of attempted second degree robbery in violation of sections 664 and 211; and on counts 3 and 4, he was convicted of assault with a firearm in violation of section 245, subdivision (a)(2). The jury found appellant personally used a firearm within the meaning of section 12022.5, subdivision (a), on all four counts. The trial court sentenced him to life imprisonment without possibility of parole. Additionally, he was sentenced to a consecutive term of five years for the personal use of a firearm finding pursuant to section 12022.5, subdivision (a). Imposition of sentence was stayed on counts 2, 3, and 4 pursuant to section 654.

## Discussion

### I. The Instructions on the Provocative Act Doctrine When Considered in Toto Are Unobjectionable

Appellant contends the trial court prejudicially erred in voir dire by erroneously preinstructing the jury on the nature and elements of the provocative act doctrine, based on which he was convicted of first degree murder. He cited the pertinent part of the reporter's transcript: " 'Now, the People in this case are proceeding on a legal theory. And the legal theory is called the provocative act theory. And in essence what this legal theory says is that—or their theory is that the defendant committed an act which provoked a lethal response, somebody else to do a shooting that led to the death of the victim. That's what the People's theory is. And to give you an example—and this is not based on the facts of this case. This is just what we call a hypothetical example. Let's assume Mr. A and Mr. B decide to rob a store. And they go into the store and Mr. A pulls out a gun and he gets in an [sic] shoot-out with the store owner. And the store owner shoots Mr. B. Everybody got it so far? Okay. Now, the law says under those circumstances that Mr. A is liable for the killing of Mr. B., his partner in crime, even

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

though he didn't shoot him. That's an illustration of the provocative act theory that the People are proceeding on in this case.' "

He claims, contrary to the court's exposition of the doctrine, the provocative act theory requires a defendant be found to have had (1) an intent to commit an inherently dangerous act over and above the underlying felony itself; and thereby provoke (2) a reasonable response to the provocation by the victim or third party under the factual circumstances of the case.

■ Respondent first argues appellant's failure to make a timely objection during voir dire to the allegedly erroneous preinstructions waived the issue on appeal, citing *People* v. *Walker* (1988) 47 Cal.3d 605, 626 [253 Cal.Rptr. 863, 765 P.2d 70].

However, there is an exception to the general rule the defendant's failure to make an appropriate objection in the trial court precludes appellate review of an alleged error. Section 1259 provides an appellate court may review any instructions given, refused, or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby. (*People* v. *Andersen* (1994) 26 Cal.App.4th 1241, 1249 [32 Cal.Rptr.2d 442]; *People* v. *Arredondo* (1975) 52 Cal.App.3d 973, 978 [125 Cal.Rptr. 419]; *People* v. *Hempstead* (1983) 148 Cal.App.3d 949, 956 [196 Cal.Rptr. 412].) Thus, an objection is not always required in order to preserve an issue of instructional error for appeal. (Cf. *People* v. *Hannon* (1977) 19 Cal.3d 588, 600 [138 Cal.Rptr. 885, 564 P.2d 1203].)

■ Yet, upon considering the issue on the merits we conclude the alleged error is immaterial in the light of all instructions the court delivered on the provocative act theory. In this connection we note that " '[i]nstructions should be given a reasonable, not a close and technical, interpretation, and they should be construed in connection with the evidence and the remainder of the charge. Whether a jury has been correctly instructed is not to be determined from a consideration of *parts* of an instruction or from *particular* instructions, but from the *entire* charge of the court.' " (*People* v. *Monteverde* (1952) 111 Cal.App.2d 156, 168 [244 P.2d 447], italics added.) Hence, jury instructions must be considered in their entirety. (*People* v. *Honeycutt* (1946) 29 Cal.2d 52, 62 [172 P.2d 698]; *People* v. *Wingo* (1973) 34 Cal.App.3d 974, 979 [110 Cal.Rptr. 448]; *People* v. *McAuliffe* (1957) 154 Cal.App.2d 332, 343 [316 P.2d 381], cert. den. 361 U.S. 920 [4 L.Ed.2d 188, 80 S.Ct. 266].)

Taken as a whole, the instructions the trial court delivered in this case state the relevant legal principles fully and clearly. In toto, they are

unobjectionable, even though isolated passages from some of the instructions may be subject to criticism. (See *People* v. *Fehrenbach* (1894) 102 Cal. 394, 402 [36 P. 678]; *People* v. *Lee Chuck* (1889) 78 Cal. 317, 339 [20 P. 719]; *People* v. *Wingo*, *supra*, 34 Cal.App.3d 974, 979.) ■ It is not expected that each instruction fully states the law of the case. One instruction may be helped and explained by another on the same point. The court will look to the pertinent instructions altogether. (*People* v. *Mohammed* (1922) 189 Cal. 429, 431 [208 P. 963]; *People* v. *Morine* (1882) 61 Cal. 367, 370.)

Thus, error cannot be predicated on the fact verbal inaccuracies appear in some parts of the instructions, or that isolated phrases, sentences, or excerpts are open to criticism. (*People* v. *Wingo*, *supra*, 34 Cal.App.3d 974, 979; *People* v. *Besold* (1908) 154 Cal. 363, 370 [97 P. 871]; *People* v. *Gibson* (1895) 106 Cal. 458, 473 [39 P. 864].) Failure of a separate instruction or part of an instruction to contain all of the conditions and limitations that may be gathered from the entire text is not ground for holding the instruction erroneous. (*People* v. *Mohammed*, *supra*, 189 Cal. 429, 431; *People* v. *Mendenhall* (1902) 135 Cal. 344, 346 [67 P. 325].)

This rule, on the other hand, is inapplicable, where the instruction states an incorrect rule of law. Such an error would not be cured by a correct instruction in some other part of the charge. (*People* v. *Westlake* (1899) 124 Cal. 452, 457 [57 P. 465].) The latter, however, is not the case here. The instructions given to the jury by the trial court, considered as a whole, stated the rule of the provocative act theory fully and clearly. The fact the trial court did not explain all elements of the doctrine at the beginning of the jury selection process does not devalue the complete written instructions delivered to the jury before they began deliberations. These instructions properly defined all relevant elements of the provocative act doctrine as established by law, which is clearly recorded in the transcripts.[2]

---

[2]The pertinent instructions stated the following:
"CALJIC 8.12: . . . A homicide committed during the commission of a crime by a person who is not a perpetrator of such crime, in a reasonable response to an intentional provocative act by a perpetrator of the crime, is considered in law to be an unlawful killing by the perpetrator of the crime. Malice is implied when the provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life. . . .
"In order to prove such crime, each of the following elements must be proved:
"1. The crime of attempted robbery was committed;
"2. During the commission of such crime, a person committing the crime also intentionally committed a provocative act;
"3. The provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life; and

## II. *Evidence Sufficiently Supports the First Degree Murder Conviction Based on the Provocative Act Theory*

■ Appellant furthermore contends the evidence presented before the jury was insufficient to support his first degree murder conviction based on the provocative act doctrine. He argues it was not proved beyond a reasonable doubt he committed a life-threatening act over and above that which was implicit in the attempted armed robbery. Appellant contends his pointing a gun at the victim and his threat to kill her if Bell would not come out of the house was not an additional act beyond the underlying felony, and the victim's response to the provocation was unreasonable.

We disagree. ■ Generally, when a defendant challenges his conviction on the ground the evidence was insufficient, " ' "[t]he test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt." ' " (*People* v. *Arcega* (1982) 32 Cal.3d 504, 518 [186 Cal.Rptr. 94, 651 P.2d 338], citing *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) " 'The appellate court must determine whether a reasonable trier of fact *could* have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.' " (*People* v. *Johnson, supra,* 26 Cal.3d at p. 576, italics added, quoting from *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

In deciding whether substantial evidence supports the conclusion of the trier of fact, the reviewing court must determine whether there is substantial proof of the essentials which the law requires in a particular case. (*People* v. *Samuel* (1981) 29 Cal.3d 489, 505 [174 Cal.Rptr. 684, 629 P.2d 485], quoting from *People* v. *Bassett* (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777].) So the question here is whether a reasonable juror *could* have found the evidence supported a finding appellant committed a life-threatening act beyond the underlying robbery which provoked this lethal response.

■ We hold the evidence sufficient to meet the requirements of the provocative act theory. The law requires the life-threatening act on which

---

"4. Such act was sufficiently provocative that the victim of the attempted robbery in a reasonable response killed another person. Murder, which occurs during the commission or attempt to commit the crime of robbery, when there was in the mind of the perpetrator of such crime, the specific intent to commit robbery, is murder of the first degree."

"Special instruction, provocative act defined: The commission of a dangerous felony, such as attempted armed robbery, is not necessarily an intentional provocative act. Some additional intentional act or conduct on the part of the perpetrator of the felony is required.

"A provocative act is defined as the intentionally placing of another in imminent peril. The imminent peril must have existed or objectively appeared to have existed at or near the time the fatal shot is fired."

liability is premised to be a proximate cause of death apart from and beyond the underlying felony. (*In re Joe R.* (1980) 27 Cal.3d 496, 505 [165 Cal.Rptr. 837, 612 P.2d 927]; *People* v. *Conely* (1975) 48 Cal.App.3d 805, 808 [123 Cal.Rptr. 252].) The jury could properly find this a life-threatening act when appellant pointed his weapon at the victim's head and threatened to shoot her if her friend would not come out of the house. After appellant realized he could not complete the robbery in the manner it was originally planned, due to Bell's immediate reaction, he chose to endanger the victim's life above and beyond the intended felony against Bell and his property. With Bell out of reach, appellant elected one victim out of the group of people who were present at the site and placed her in a chokehold with an assault weapon pointing at her head. Thus, appellant dramatically increased the risk of severe injuries and even death for his chosen target by the manner of restraint and the proximity of the weapon to her head.

Appellant, to support his position, cites *People* v. *Washington* (1965) 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130], where defendant and his accomplice attempted to rob a service station. The proprietor in his office, hearing someone in the adjacent storage room yell "robbery," took his revolver out of a drawer and, when the accomplice entered the office room with a gun pointing at him, fired first, mortally wounding the accomplice. The Supreme Court reversed defendant's first degree murder conviction, based on a restrictive application of the felony-murder doctrine. But also in view of the rule of vicarious liability, briefly touched by the court, the decision was correct, since there was no additional action or threat toward anybody in the commission of the crime other than the pointing of the gun at the victim apart from and above the mere attempted robbery. No other person than the proprietor was directly endangered through the commission of the robbery, and the proprietor himself killed the robber before the robber realized he was facing opposition. The accomplice was not even able to demand anything from the proprietor. The proprietor simply anticipated any kind of threat to his own person by shooting the robber before the robber could realize the attempt had failed. Here, however, appellant after realizing the attempt had failed turned the threat away from the original robbery victim and directed it toward another person whose physical integrity in the beginning had nothing to do at all with the ongoing robbery. Of equal significance, here appellant threatened this third person with death in order to force Bell to do something, come out of his then locked house, that was different from the robbery itself.

Nor are we persuaded by *In re Joe R.*, *supra*, 27 Cal.3d 496, because, once again, the facts are clearly distinguishable. There defendant minor and an accomplice robbed the victim after having him walk behind some nearby

buildings. As they walked, defendant warned the victim his accomplice would kill the victim if he did not do as he was directed. When the accomplice tried to get the victim to go into an alley, the victim, fearing for his life, grabbed for the gun and struggled with the accomplice. During their struggle, defendant hit the victim with the fist on the back of his head. Shortly after this blow, the victim gained possession of the gun and shot the accomplice, while the defendant was running away.

The Supreme Court held this did not constitute a provocative act murder. The high court reasoned the defendant's strike to the victim's head did not provoke the victim's resistance, and his admonition to do what the accomplice said or "he'll kill you" was only directed toward effecting the underlying felony as it was originally planned. (*In re Joe R.*, *supra*, 27 Cal.3d at p. 507.) The act actually provoking the victim's resistance was not the minor's admonition to obey, but the accomplice's command to go to the alley, where the victim thought he would be killed.

Here, however, Bell after locking the front door behind him and taking his gun, initially wanted to get out through the back door. It was only because of appellant's audible threats to kill Bell's girlfriend that Bell changed his mind and decided to go out through the front door to first kill appellant. Hence, the act provoking lethal resistance here was not the attempted robbery, but the subsequent threat to the girlfriend's life. By restraining the victim around the neck and holding the weapon to her head, appellant menaced the victim above what is typically implied in robbing someone. Appellant's actions went beyond the display of a weapon and the issuance of demands usually inherent to an armed robbery and, thereby, directly caused Bell's armed resistance which led to the death of the victim.

The facts here are closer to those in *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578 [91 Cal.Rptr. 275, 477 P.2d 131]. There the defendant was waiting in a getaway car outside a liquor store; his accomplices D and S were inside the store, trying to hold it up. According to the proprietors, D had been chattering insanely and saying, "Don't move or we'll have an execution right here," while S was pointing a gun at one of the proprietors looking "intent" and "apprehensive." Both proprietors drew weapons and shot at S, who got killed.

The defendant driver sought to have the murder count of his charge set aside, claiming that since neither D nor S fired the first shot, neither initiated the gun battle which led to S's death. The court denied defendant's writ of prohibition to bar his trial for murder.

The Supreme Court held ". . . the central inquiry in determining criminal liability for a killing committed by a resisting victim or police officer is

whether the *conduct* of a defendant or his accomplices was sufficiently provocative of lethal resistance to support a finding of implied malice." (*Taylor* v. *Superior Court*, 3 Cal.3d at p. 583, original italics.) Petitioner there contended, as in principle appellant does here, that since his accomplice did not fire the first shot, he did not "initiate" the gun battle which led to the victim's death. The Supreme Court, however, held a gun battle can be initiated by acts of provocation falling short of firing the first shot. (*Id.*, at p. 584.) Our high court pointed to *People* v. *Reed* (1969) 270 Cal.App.2d 37 [75 Cal.Rptr. 430]. In that case a defendant resisted an officer's command to put up his hands, and pointed his gun toward the officer and the robbery victim whom he held as hostage. The officer commenced firing, wounding defendant and killing the victim. Although defendant had been unable to fire a single shot, his murder conviction was upheld, because his "aggressive actions" were sufficient evidence *to impute malice to* him. "Under these circumstances it may be said that defendant initiated the gunplay. . . ." (*Id.* at p. 46.)

Consistent with the *Reed* analysis, the Supreme Court in *Taylor* v. *Superior Court, supra*, 3 Cal.3d 578, reviewed the accomplice's conduct, consisting of a coercive approach to the victim, repeated threats of "execution," and nervous apprehension as the victim was held at gunpoint. This "was sufficiently provocative of lethal resistance to lead a man of ordinary caution and prudence to conclude that [the accomplices] 'initiated' the gun battle, or that such conduct was done with conscious disregard for human life and with natural consequences dangerous to life." (*Id.*, at p. 584.)

Appellant's conduct in the instant case clearly is of this nature. The fact his gun jammed—because he was using the wrong ammunition—was a surprise to him as well as everyone else. Thus, a jury reasonably could conclude appellant actually initiated the gunplay even though he did not fire the first shot. In view of appellant's threats to the girlfriend's life, Bell's reaction was certainly not unreasonable nor unforeseeable under the circumstances.

For the above reasons, we find substantial evidence supports the jury's verdict and uphold appellant's first degree murder conviction based on the provocative act theory.

III. *This Provocative Act Murder Was "Committed While the Defendant was Engaged in the Attempted Commission of a Robbery" and Consequently Justifies a Special Circumstance Finding*

■ Finally, appellant contends that what he characterizes as "the felony-murder special circumstance" of section 190.2, subdivision (a)(17)(i) was

applied erroneously to his case. Under *Washington,* the felony-murder doctrine does not include a killing committed by a person other than the perpetrator or an aider and abettor of the underlying felony. Since his first degree murder conviction was not for a felony murder, appellant argues, the "felony-murder special circumstances" described in section 190.2 subdivision (a)(17) do not apply here either. Consequently, the trial court erred in sentencing him to life imprisonment without possibility of parole.

The problem with appellant's analysis is that, by its terms, section 190.2 subdivision (a)(17) does not limit the special circumstances it defines to murders based on a "felony-murder" theory. It only requires the murder was committed "while the defendant was engaged in . . . the commission of" one of the designated felonies. After all, the felony-murder doctrine need only be invoked when the defendant lacked express malice, typically when the victim's death occurred through accident or an unintentional act by one of the perpetrators of the underlying felony. If the defendant intentionally takes aim and shoots someone dead at the scene of the robbery or other crime he can be charged and often is convicted of first degree "malice murder." The fact such a defendant was convicted of "malice murder" rather than a "felony murder" does not mean he cannot be found to qualify for the special circumstance of having committed that murder "while . . . engaged in . . . the commission of . . ." a robbery or other designated felony.

Similarly, the fact this defendant was convicted on a "provocative act" theory, rather than a "felony-murder" theory, does not preclude a finding this murder "was committed while the defendant was engaged in . . . the commission of . . ." an attempted robbery and hence justifies the sentence of life without the possibility of parole. Defendant was in the midst of attempting to rob the victims when Bell bolted into the house. In order to continue the robbery the defendant himself committed the provocative act of seizing Bell's fiancée and threatening her life unless Bell came out so he could be robbed. And, the defendant was still "engaged in . . . the commission" of this attempted robbery at the moment the victim responded to this provocative act by shooting, wildly as it turned out, at the defendant and killed his own fiancée.

The felony-murder doctrine, in contrast with the "while in the commission of a felony" special circumstance, requires the murder be "committed *in the perpetration of*" a felony. The Supreme Court has construed this to mean the murder must be committed in order "to perpetrate the felony," and therefore must be committed by the felon or his accomplice. Indeed it is as a result of this construction of the words "in the perpetration of" that our high court concluded "provocative act" murders are not "felony murders." (*People* v. *Washington, supra,* 62 Cal.2d at p. 781.)

■ If the electorate had wished to limit the "while in the commission of a felony" special circumstance to murders successfully prosecuted under a "felony-murder" theory, the language of section 190.2, subdivision (a)(17) would have been drafted to track the language of the felony-murder definition of section 189. Only those murders committed "in the perpetration of" the designated felonies would have qualified as special circumstance murders justifying the enhanced penalty. But instead the language of the special circumstance provision is broadened to encompass all murders committed "*while* [the defendant] . . . is engaged in . . . the commission of . . ." (italics added) robbery or one of the other designated felonies.

In contrast to the "committed in the perpetration of" language, this clause of section 190.2 (a)(17) does not imply the murder must have been committed by one of the perpetrators in furtherance of the felony. Instead the only connection required between the murder of which the defendant has been convicted and the felony is that it occur *while* the defendant is engaged in committing that felony.

■ Accordingly, the fact appellant was convicted of "provocative act" murder rather than "felony murder" is irrelevant to whether the murder qualified as a special circumstance murder under section 190.2, subdivision (a)(17). Whatever its characterization, the murder was committed "while . . . he was engaged in . . . the commission of . . ." this attempted robbery. Therefore, the jury was entitled to find it was a special circumstance murder.

We recognize this opinion sanctions imposition of the death penalty or life without the possibility of parole on defendants who did not "pull the trigger" or affirmatively assist the one who did. We also recognize many "provocative act" murder scenarios result in the deaths of people, such as the defendant's own confederates, which the defendant had no intent whatsoever of killing. Indeed the dead person may be someone the defendant would have gone out of his way to protect from harm. But we also appreciate the fact the law now only requires defendants who are "major participants" in felonies to exhibit "reckless indifference to human life," not an intent to kill, in order to qualify for the death penalty. (*In re Swain* (1949) 34 Cal.2d 300 [209 P.2d 793]; § 190.2, subd. (d).)

We observe appellant exhibited a more culpable state of mind than many "major participants" convicted under a first degree felony-murder theory who would be eligible for the death penalty without an intent to kill anyone. Here appellant grabbed the ultimate victim in a chokehold and threatened to kill her. For all we know he might have done so if the victim's boyfriend had not emerged from the house, or if his Mac 11 had worked. He certainly

expressed an intent to kill her unless he got his way. And it was appellant, not some accomplice, who personally took this provocative action, which produced a foreseeable violent response. Appellant's actions, his statements, and his evident state of mind all exhibited a truly "reckless indifference to human life" and especially the life of the eventual victim. In our view, he was far more culpable than many accomplices in "felony murder" situations who would be eligible for the death penalty or life without possibility of parole under current law. Thus, we have no trouble upholding the jury's special circumstance finding or the sentence of life without possibility of parole which goes along with it.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied June 5, 1996, and appellant's petition for review by the Supreme Court was denied August 28, 1996. Mosk, J., and Chin, J., were of the opinion that the petition should be granted.