[Crim. No. 20031. May 14, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES PAUL FRIES, Defendant and Appellant.

## COUNSEL

Ronald D. MacGregor, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Richard L. Adams, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BIRD, C. J.**—Appellant, James Paul Fries, was convicted of robbery in the second degree by a jury. (Pen. Code, § 211.) He asks this court to hold that the trial court abused its discretion in denying his motion to exclude evidence of a prior conviction which was offered to impeach his credibility.

I

Approximately 9 p.m. on November 9, 1973, Bill Burrell left a bar in Modesto. As he walked across the parking lot adjacent to the bar, someone grabbed him and struck him on the head, knocking him unconscious. When he regained consciousness, he discovered that his wallet, which contained $40, was gone. Burrell did not see who robbed him nor did he remember talking to or leaving with anyone from the bar.

The evidence presented against appellant at trial was circumstantial. Andrew Haines testified that about one-half hour before the robbery, he was in the bar with Richard Nystrom and they noticed Burrell was sitting at the counter and looking in their direction. Nystrom spoke to Burrell, picked up some money which was on the counter in front of Burrell, and returned with Burrell to the table. Burrell, who had been drinking since the middle of the afternoon, fell when he attempted to sit down, hitting his head on the floor. Burrell then got up and staggered to the bathroom.

While Burrell was in the bathroom, another man joined Nystrom and Haines at the table. Nystrom gave the other man the money he had picked up from the counter, remarking that Burrell was "loaded." Haines interpreted the remark to mean that Burrell had a large amount of money. The man went into the bathroom and when he came out shortly thereafter, Nystrom approached him.

The two men conversed by the bathroom and then returned to the table. Haines heard the man say toNystrom, "Let's get him to go with us." When Burrell returned, Burrell, Nystrom and the other man left the bar. The man, who was the last to leave the bar, waved good-bye to one of the cocktail waitresses.

About five minutes after the three men left the bar, Francisco Sanchez, the bar's owner and bartender, called the police because he suspected something might happen outside. By the time the police arrived 15 minutes later, Burrell had been robbed and had returned to the bar.

At the trial, Sanchez identified a photograph of appellant as the man he had seen in the bar with Burrell and Nystrom. However, Sanchez admitted that at a prior trial[1] he had been unable to identify the appellant in person or from his photograph as the third man.

Haines also identified appellant at the trial as the third man. Haines further claimed that he had seen appellant on two other occasions in late November and early December 1973 and that he had talked to appellant during the latter encounter. However, Lieutenant Deputy Richard McKay, jail commander of the Stanislaus County jail, testified that appellant had been arrested at 12:30 a.m. on November 10, 1973, and had remained continuously in the county jail until February 5, 1974.

The cocktail waitress could not identify appellant as the man who waved to her.

At the close of the prosecution's case, appellant moved to exclude evidence of his prior robbery conviction. The trial court denied the motion and appellant did not testify. The sole witness presented by the defense was the jail commander.

Appellant was convicted of second degree robbery.

---

[1] The present appeal involves appellant's fourth trial. The jury had been unable to reach a verdict in the first trial. A second trial ended in a mistrial when it was discovered that some of the jurors had participated in the first trial. The judgment of conviction in the third trial was reversed on appeal.

II

In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], this court unanimously held that although Evidence Code section 788[2] authorizes the use of a prior felony conviction to impeach the credibility of a witness, a trial court must, when requested, exercise its discretion under section 352[3] and exclude this evidence if the probative value of the prior conviction is outweighed by other considerations, such as the risk of undue prejudice. (*People* v. *Woodard* (1979) 23 Cal.3d 329 [152 Cal.Rptr. 536, 590 P.2d 391]; *People* v. *Rollo* (1977) 20 Cal.3d 109, 115-116 [141 P.2d 177, 569 P.2d 771]; *People* v. *Rist* (1976) 16 Cal.3d 211, 218-219 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *Antick* (1975) 15 Cal.3d 79, 97 [123 Cal.Rptr. 475, 539 P.2d 43].)

Some of "the more important factors that must be considered by trial courts . . ." in deciding whether to admit a prior felony conviction to impeach a witness' credibility were enumerated by this court in *People* v. *Beagle, supra,* 6 Cal.3d at page 453. Since the purpose of the use of a prior felony conviction is to impeach credibility, the first factor which the trial court must evaluate is whether the prior conviction reflects adversely on an individual's honesty or veracity; if it does, the degree of probative value of the conviction must be determined. (*People* v. *Woodard, supra,* 23 Cal.3d at pp. 335-336.) As this court stated in *People* v. *Rollo, supra,* 20 Cal.3d at page 118, "different felonies have different degrees of probative value on the issue of credibility. Some, such as perjury, are intimately connected with that issue; others, such as robbery and burglary, are somewhat less relevant; and ' "Acts of violence . . . generally have little or no direct bearing on honesty and veracity." ' "

The second factor which the trial court must evaluate in determining whether the conviction is probative of the witness' credibility is the nearness or remoteness in time of the prior conviction. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) A conviction, " '[e]ven one involving fraud or stealing, for example, if it occurred long before and has been followed by

---

[2]Section 788 provides in pertinent part: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ."

All references hereinafter to statutes are to the Evidence Code unless otherwise indicated.

[3]Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

a legally blameless life, [4] should generally be excluded on the ground of remoteness.' " (*Ibid.*) The "remoteness detracts significantly from the value of this evidence in impeaching . . . credibility." (*People* v. *Antick, supra,* 15 Cal.3d at p. 99.)

The trial court must weigh these two factors, which show the probative value of the conviction, against the probability that admission of such evidence "will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

While the trial court must engage in this balancing process when a prior conviction is offered to impeach the credibility of any witness, there are several considerations which are of particular importance in a criminal case when the witness is the defendant. This court has previously grouped these considerations into two general categories: (1) the "unique risk of undue prejudice and confusion of issues" (*People* v. *Antick, supra,* 15 Cal.3d at p. 97) which occurs when the prior convictions are admitted to impeach the credibility of a defendant who testifies, and (2) the adverse effect on the administration of justice when a defendant elects not to take the stand in order to keep information about his prior felony convictions from the jury. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.)

If a defendant testifies and is impeached by means of a prior felony conviction, there is a widely acknowledged danger that this evidence will be misused by the trier of fact. "Despite limiting instructions, the jury is likely to consider this evidence for the improper purpose of determining whether the accused is the type of person who would engage in criminal activity." (*People* v. *Antick, supra,* 15 Cal.3d at p. 97.)[5] As the United States Supreme Court has noted in a related context, evidence of a "defendant's prior trouble with the law . . . is said to weigh too much

[4] In *People* v. *Antick, supra,* 15 Cal.3d at page 99, this court noted that the absence of "a legally blameless life . . . , at most, enchance[s] only slightly the probative value of the evidence for impeachment purposes."

[5] One well known commentator has stated, "If the accused is forced to admit that he has a 'record' of past convictions, particularly if the convictions are for crimes similar to the one on trial, there is an obvious danger that the jury, despite [limiting] instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge . . . than they will to the legitimate bearing of the past convictions on credibility." (McCormick, Evidence (2d ed. 1972) § 43, p. 89; see also Griswold, *The Long View* (1965) 51 A.B.A.J. 1017, 1021; Schaefer, *Police Interrogation and the Privilege Against Self-Incrimination* (1966) 61 Nw.U.L.Rev. 506, 512.)

with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." (*Michelson* v. *United States* (1948) 335 U.S. 469, 475-476 [93 L.Ed. 168, 173-174, 69 S.Ct. 213].) This tendency to prejudge the issue of guilt denies an accused the presumption of innocence and lessens the burden of the prosecutor to prove guilt beyond a reasonable doubt.

There is also the "obvious danger" that the jury will decide that based on his prior convictions, the accused "ought to be put away without too much concern with present guilt." (McCormick, *supra*, § 43, p. 89.) Further, the admission of prior convictions often confuses the issues at trial and "draw[s] [the jurors'] minds away from the real issue" of guilt or innocence. (*Boyd* v. *United States* (1892) 142 U.S. 450, 458 [35 L.Ed. 1077, 1080, 12 S.Ct. 292]; see also *People* v. *Antick, supra,* 15 Cal.3d at p. 97.)

If, on the other hand, the accused elects *not to testify* in order to keep the evidence of prior convictions from the jury, the jury is deprived of competent, probative evidence—the testimony of the accused. For example, an accused's testimony might be necessary to give a complete picture of the events, since he may be the sole witness or the defense witness with the most complete knowledge of the events underlying the charges. If a specific intent crime is involved, or if defenses of diminished capacity, unconsciousness or insanity are proffered, an accused's testimony may well be the most direct evidence of his mental state. Further, his testimony may add weight and credibility to testimony of other witnesses that may otherwise appear to the jury to be unconvincing or suspect. This is a factor which is extremely difficult for a reviewing court to assess from the words of a transcript. Thus, " '[e]ven though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment.' " (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.)

An accused's failure to testify may itself be misperceived by the jury, since "his silence alone will prompt the jury to believe him guilty." (McCormick, *supra*, § 43, p. 89.) The jury "will expect the defendant to present all the evidence he can to escape conviction, and it will naturally

infer that his failure to explain or deny evidence against him when the facts are peculiarly within his knowledge arises from his inability to do so. 'Such an inference is natural and irresistible. It will be drawn by honest jurymen, and no instruction will prevent it.' [Citation.]" (*People* v. *Modesto* (1965) 62 Cal.2d 436, 452 [42 Cal.Rptr. 417, 398 P.2d 753].)[6]

Our system of criminal justice suffers if the trier of fact is diverted by improper use of a prior felony conviction from "the true purpose of a criminal trial, the ascertainment of the facts." (*People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1].) Similarly, the accused pays a price: "If he stays off the stand, his silence alone will prompt the jury to believe him guilty. If he elects to testify, his 'record' becomes provable to impeach him, and this again is likely to doom his defense." (McCormick, *supra*, § 43, p. 89.) Therefore, prior convictions should be admitted at trial to impeach an accused only when specific criteria have been carefully evaluated.

In the present case, the prior conviction was recent, and under the rules of evidence, admission would be favored. However, a conviction for robbery is only partly relevant to credibility, because "[robbery] is a crime which is both larcenous and assaultive, and thus bears *in part* on the perpetrator's integrity and veracity." (*People* v. *Rist, supra*, 16 Cal.3d at p. 220, italics added.) Moreover, as this court recently reiterated in *People* v. *Rollo*, convictions for theft offenses such as "robbery and burglary, are somewhat less relevant" on the issue of credibility than are crimes such as perjury (20 Cal.3d at p. 118) and hence are entitled to "somewhat less" weight.[7]

---

[6] In *People* v. *Modesto, supra*, this court held that an accused's right against self-incrimination was not violated when a prosecutor commented in his closing arguments on the failure of the accused to testify. Subsequently, this holding was overruled by the United States Supreme Court: "What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." (*Griffin* v. *California* (1965) 380 U.S. 609, 614 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229].)

[7] There is, in this case, no quarrel with the dissent that the crime of robbery is probative of honesty. (Cf., *post*, at p. 235.) The points to be made about the "partial" relevance of a prior robbery conviction to a witness' credibility are more subtle than the dissent appears to appreciate. A prior robbery conviction involves factors that reflect on honesty (the theft) *and* factors that do not (the use of force or fear; see *People* v. *Woodard, supra*, 23 Cal.3d at p. 340). Thus, only some of the elements of robbery are relevant to impeachment; the others are irrelevant. Therefore, a prior conviction of robbery is only "partly relevant to credibility."

Even those elements of a robbery conviction which do reflect on a witness' credibility

Balanced against these two factors was the fact that the robbery conviction was identical to the crime for which appellant was being tried and thus strongly indicated exclusion. While the risk of undue prejudice is substantial when any prior conviction is used to impeach the credibility of a defendant-witness, it is far greater when the prior conviction is similar or identical to the crime charged. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453; *People* v. *Antick, supra,* 15 Cal.3d at p. 97; *People* v. *Rist, supra,* 16 Cal.3d at p. 219.) "A jury which is made aware of a similar prior conviction will *inevitably* feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged." (*Ibid.,* italics added.) Consequently, this court has warned that similar or identical priors should be admitted "sparingly." (*People* v. *Rist, supra,* 16 Cal.3d at p. 219.)

In *Rist,* the trial court's admission of a similar prior conviction to impeach the credibility of a defendant-witness, when there were dissimilar prior convictions available for that purpose, was found to be an abuse of discretion. In stating that similar prior convictions should be admitted "sparingly," this court was not implying that a similar or identical prior conviction should be admitted in *every* case where no dissimilar prior conviction is available to impeach the credibility of a defendant-witness. Rather, the court was emphasizing the extreme caution that trial courts must exercise in deciding whether to admit a similar prior conviction since the risk of undue prejudice is so great. If the probative value of the similar prior conviction is outweighed by the risk of undue prejudice, the similar prior conviction must be excluded. It is irrelevant that there may be no dissimilar prior convictions. Several Court of Appeal decisions[8] were specifically disapproved in *Rist* because similar prior convictions were admitted to impeach the credibility of the defendant-witness. In two

are less probative of that issue than the elements of other convictions, such as perjury. Thus, while a robbery or other theft conviction may be relevant to credibility, it is entitled to less weight in the *Beagle* balancing process than such other offenses.

It is noteworthy that the language used in the dissent to describe a person with a prior robbery conviction is itself proof that such evidence will be misused by a trier of fact. Although it is well settled that prior convictions are relevant only to impeach credibility and not to prove the witness' general character, the dissent argues a witness' prior robbery conviction shows "[h]e is a thief." (*Post,* at p. 235.) If the statutory restriction on the use of evidence of prior felony convictions can be so easily forgotten by learned and well-trained judges acting in the relatively calm atmosphere of an appellate court, one can hardly expect lay persons or others operating in the heat of trial to do better.

[8] *People* v. *Delgado* (1973) 32 Cal.App.3d 242 [108 Cal.Rptr.399]; *People* v. *Stewart* (1973) 34 Cal.App.3d 244 [109 Cal.Rptr. 826]; *People* v. *Jackson* (1974) 37 Cal.App.3d 496 [112 Cal.Rptr. 411]; *People* v. *Wingo* (1973) 34 Cal.App.3d 974 [110 Cal.Rptr. 448]; *People* v. *Hayden* (1973) 30 Cal.App.3d 446 [106 Cal.Rptr. 348]; and their "progeny." (*People* v. *Rist, supra,* 16 Cal.3d at pp. 221-222.)

of these disapproved decisions, *People* v. *Delgado* (1973) 32 Cal.App.3d 242 [108 Cal.Rptr. 399] and *People* v. *Hayden* (1973) 30 Cal.App.3d 446 [106 Cal.Rptr. 348], no dissimilar prior convictions were available for impeachment. These decisions were disapproved because they accorded "little weight to the crucial counterbalancing factors noted in *Beagle,* particularly the near identity of the crimes and the effect of the defendant's failure to testify in circumstances where his testimony might be significant." (*People* v. *Rist, supra,* 16 Cal.3d at p. 221.) Thus, *Rist* strongly foreshadowed, if it did not compel, the conclusion that appellant's identical prior conviction must be excluded in this case.

The second counterbalancing factor favoring exclusion of the prior conviction was that appellant's testimony might have contributed to the jury's understanding of the case, since no other witness testified to a defense version of the facts. (Cf., *ante,* at p. 228.) Among the more obvious potential defenses to which appellant might have testified are alibi, mistaken identification, diminished capacity, or presence at the scene of the robbery, without aiding or abetting it.

The exclusion of a prior conviction to impeach credibility does not prevent a prosecutor from subjecting a defendant-witness to piercing cross-examination, "the greatest legal engine ever invented for the discovery of truth." (5 Wigmore, Evidence (Chadbourn rev.ed. 1974) § 1367, p. 32.) Through cross-examination, the prosecutor can raise doubts as to the general truthfulness of the witness and question the credibility of his version of the facts. Also, the defendant's memory and capacity for observation can be challenged. Prior inconsistent statements may be used to impeach credibility.

The dissent asserts that the exclusion of similar prior convictions "rewards the criminal specialist." (Dis. opn., *post,* at p. 236.) With all due respect, the dissenting justices miss the essence of today's holding. It is the *innocent* accused who suffers when evidence of a similar or identical prior conviction is admitted, for this evidence inevitably persuades a jury that the accused must be guilty of the crime charged *because* he has been guilty of such crimes in the past.[9] However, even the so-called "criminal

---

[9]Indeed, the dissent's use of the inflammatory label "criminal specialist" to describe an accused who has previously been convicted of a crime similar to the one for which he is on trial, is itself an indication of how prejudicial such evidence is likely to be.

specialist" may be innocent of the offense charged.[10] The holding by this court today is designed to give that innocent individual a fair opportunity to prove it.

Nor can it accurately be said that a guilty individual is "home free" as a result of the exclusion of his similar or identical prior conviction. (Dis. opn., *post*, at p. 236.) There are numerous other methods by which those defendants who are guilty can be and routinely are impeached and convicted. (Cf., *ante*, at p. 231.)

### III

The Attorney General argues that appellant would not have testified even if the prior conviction had been excluded. He bases this contention on the fact that at appellant's third trial, he failed to take the stand although he had not yet sustained a conviction. However, appellant did testify at his first trial and the jury was unable to reach a verdict. An equally compelling conclusion could be reached that appellant would have elected to testify in his fourth trial, since he had been more successful when he did testify than when he did not.[11]

The Attorney General further argues that appellant should have made an offer of proof as to what his testimony would have been if he had testified. However, this court in *Rist, supra,* 16 Cal.3d at page 222, held that "[s]uch an offer, although doubtless helpful to the court, is not a *sine qua non* to the court's duty to evaluate probative value against prejudicial effect . . . ."

---

[10]Cf., Griswold, *supra*, 51 A.B.A.J. at page 1021: "The man with a prior criminal record in this country is far more at the mercy of the authorities—police and judicial—than seems to me to be warranted. He may have learned his lesson and have gone straight as an arrow since his release. But he is an immediate suspect for future arrest. And if he is arrested and put on trial, he has two almost hopeless alternatives in many states. He can take the stand and deny his participation in the crime now charged. If he does this, his prior conviction can often be shown to impeach his testimony, in which case he is very likely to be convicted. Or he can refuse to take the stand, resting on his constitutional privilege, in which case he is also very likely to be convicted. Ought we not, even with persons who have once offended against society, undertake to develop procedures which will seek as far as possible to bring out the truth about the crime now charged, not some prior crime?"

[11]The Attorney General contends that appellant should have expressly stated on the record that his decision not to testify was due to the denial of the motion to exclude the evidence of the prior conviction. However, such an explicit recitation is not necessary. The record indicates that defense counsel did communicate to the trial court that appellant's decision would be affected by the denial of the motion. Indeed the trial court so understood it: "[N]ow [defense counsel] says that if I permit this, that it would probably stop him from taking the stand."

To require such an offer of proof from appellant would have violated his right against self-incrimination. This court has repeatedly forbidden "compelled disclosures which could serve as a 'link in a chain' of evidence tending to establish guilt of a criminal offense . . . ." (*Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673].) So long as the disclosure might conceivably lighten the prosecution's burden of proving its case, a defendant "cannot be compelled to disclose [the evidence] at any time prior to its actual use at trial." (*Bradshaw* v. *Superior Court* (1970) 2 Cal.3d 332, 333, fn. 3 [85 Cal.Rptr. 136, 466 P.2d 680].) "It requires no great effort or imagination to conceive of a variety of situations wherein the disclosure of the expected testimony of defense witnesses . . . could easily provide an essential link in a chain of evidence underlying the prosecution's case in chief."[12] (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d at p. 326; *People* v. *Bais* (1973) 31 Cal.App.3d 663 [107 Cal.Rptr. 519].)

In the present case, the Attorney General seeks the testimony of an accused before he testifies. The possibility that such an offer of proof will lighten the state's burden is obvious. For example, if, as is often the case, the *Beagle* motion is made in advance of the taking of evidence, the prosecution will be able to anticipate and structure its case around the expected defense. In other cases where the offer of proof is made and the motion is denied, and there is a reversal on appeal following a conviction, the prosecution will know in advance of retrial the essence of the defendant's testimony even if the defendant did not testify at the first trial. In the past, this court has declined to require an accused to make such an offer in order to perfect his motion to exclude impeachment evidence of prior felony convictions. Any change in that policy would violate well-settled constitutional principles.

## IV

 It is clear that the trial court erred in admitting the prior robbery conviction since the conviction was identical to the offense for which appellant was on trial. Further, this court has no clue as to what appellant's testimony would have been had he testified. Absent any basis for concluding that such testimony would not have affected the result,

---

[12]As stated in *Malloy* v. *Hogan* (1964) 378 U.S. 1, 13, footnote 9 [12 L.Ed.2d 653, 663, 84 S.Ct. 1489], quoting from an earlier case, " 'in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry.' "

"the court is of the opinion 'that it is reasonably probable that a result more favorable to [appellant] would have been reached in the absence of this error.' " (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].)

The judgment is reversed.

Tobriner, J., Mosk, J., Manuel, J., and Newman, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. The majority opinion continues a lamentable trend of three prior cases of this court toward the total demolition of Evidence Code section 788. (See *People* v. *Rollo* (1977) 20 Cal.3d 109, 124 [141 Cal.Rptr. 177, 569 P.2d 771] (dis. opn.); *People* v. *Rist* (1976) 16 Cal.3d 211, 223 [127 Cal.Rptr. 457, 545 P.2d 833] (dis. opn.); *People* v. *Antick* (1975) 15 Cal.3d 79, 100 [123 Cal.Rptr. 475, 539 P.2d 43] (dis. opn.).) Here, the majority reverses defendant's *fourth* trial for the same robbery, on the ground that the trial court erred in permitting admission of defendant's prior 1974 robbery conviction. As I will explain, the trial court properly, in my opinion, exercised its discretion in admitting the prior conviction. Moreover, the majority's reason for reversal, thereby necessitating a *fifth* trial for the same offense, is entirely speculative. It is founded upon the doubtful premise that the defendant was deterred by the trial court's ruling from testifying in his defense.

Evidence Code section 788 expressly permits introduction of a prior felony conviction for the purpose of impeachment. The section provides that "For the purpose of attacking the credibility of a witness, it *may* be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ." (Italics added.) In 1972, we quite properly held that the trial courts possessed discretion under section 788 to exclude prior convictions "when their probative value on credibility is outweighed by the risk of undue prejudice." (*People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1].) We expressly cautioned in *Beagle,* however, that "We do not purport to establish rigid standards to govern that which in each instance must depend upon the sound exercise of judicial discretion." (P. 453.) Moreover, we emphasized in *Beagle* that "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. *The general rule is that felony convictions bearing on veracity are admissible." (Ibid,* italics added.)

Despite our assurance in *Beagle* that we would refrain from specifying "rigid standards" of admissibility to control the trial court's discretion, our subsequent cases have done just that. In *Antick, supra,* 15 Cal.3d 79, we ruled that the trial court abused its discretion in admitting prior convictions which were too remote in time; in *Rist,* we ruled that prior convictions identical or similar in nature to the charged offense never could be used for impeachment purposes where dissimilar priors were available for that purpose; and in *Rollo,* we ruled that the trial court could not achieve a compromise solution by withholding from the jury the specific nature, but not the fact, of a prior conviction.

In the present case, the majority rules inadmissible a 1974 prior robbery conviction on the grounds that (1) it fails to bear sufficiently on defendant's credibility as a witness, and (2) it is identical to the charged offense, and hence its admission would have unduly prejudiced defendant. The net result of the majority's holding is that at defendant's *fifth* trial for robbery, he may take the witness stand without fear of any impeachment by his recent prior robbery conviction. He thus assumes the precise "false aura of veracity" to which in *Beagle* we had carefully concluded he was not entitled.

With due respect, I must take issue with the majority's insistence that defendant's prior robbery conviction "is only partly relevant to credibility." (*Ante,* p. 229.) In my opinion, the prior conviction of a robbery bears directly upon and is *fully* relevant on the issue of defendant's credibility. Robin Hood aside, I never heard of an honest robber. The crime of robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) The offense necessarily involves stealth and dishonesty. The fact that, in a particular case, the robber has been assaultive or used violence detracts not at all from the fact that he has stolen. He is a thief. He is dishonest.

While attempting to exercise the discretion which it reasonably assumed it possessed the trial court stated, "It seems to me that the probative value of this . . . [1974] conviction outweighs the prejudice. Certainly another robbery, or a robbery conviction certainly bears on veracity. His conduct, . . . without question reflects adversely on his

honesty and integrity. It seems to be a matter in which I have considerable discretion, and I frankly feel that the jury is entitled to know this." This is a proper exercise of judicial discretion.

Despite the trial court's careful and thoughtful attempt to perform its discretionary responsibilities under *Beagle,* the majority finds an abuse. The majority stresses the fact that the prior offense here was identical to the charged offense. We have said in *Beagle* that, as legislatively expressed in section 788, "The general rule is that felony convictions bearing on veracity are admissible." To assume once again the role of legislative draftsmen by writing still another exception to section 788 extends our limited judicial function. The majority's zeal exceeds its power. Furthermore, its exclusion of the prior conviction unnecessarily and very unfortunately rewards the criminal specialist whose prior criminal career may not have been as diverse as that of other felons. If a defendant specializes in robbery, rape or forgery, insofar as felony-impeachment is concerned, he is home free. If on the other hand he is a generalist and tries his hand at different crimes, then he may face impeachment. I share the trial court's belief that in appraising the credibility of defendant's denial of complicity in the charged robbery, the jury was entitled to know, in its search for the truth, that defendant had recently committed that offense and, accordingly, that his testimony might be viewed with appropriate caution.

Second, the majority relies upon the fact that admissibility of his prior conviction may have deterred defendant from taking the stand and testifying upon matters which "might have contributed to the jury's understanding of the case." (*Ante,* p. 231.) But this factor is present in *every* case, for every defendant must choose between testifying or remaining silent. Section 788 contains no exception in favor of a defendant who might "contribute" to the jury's understanding of the case. Instead, under the clear language of that section, all defendants who elect to testify must face the possibility of impeachment by disclosure of their prior convictions.

As noted above, the immediate effect of today's ruling will be to require an unnecessary *fifth* trial of this defendant in this robbery case. The more far-reaching and unfortunate effect of this continued judicial whittling away at a clear statutory enactment, of course, will be to allow defendants in future cases of this kind to assume the precise "false aura of veracity" expressly condemned in *Beagle,* despite their commission of

recent, similar or identical prior convictions of a type which bear directly upon their credibility.

I would affirm the judgment

**CLARK, J.**—I dissent for the reasons expressed by Justice Richardson in his dissenting opinion, *ante,* and in my dissenting opinion in *People* v. *Woodard* (1979) 23 Cal.3d 329, 343-345 [152 Cal.Rptr.536, 590 P.2d 391].