[Crim. No. 18669. First Dist., Div. Four. Jan. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY DEMONT ZIMMERMAN, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Peter R. Silten and Thomas N. Griffin, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson and John B. Moy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RATTIGAN, Acting P. J.**—Defendant Bobby Demont Zimmerman was charged by information with robbery (Pen. Code, § 211)[1] and a violation of section 12021 (possession of a concealable firearm by a past-convicted felon). A jury found him guilty as charged. He appeals from the judgment of conviction. We reverse it on the ground that he was unconstitutionally deprived of the effective assistance of counsel at his trial.

*Procedural Sequence*

A detailed chronological summary of the prosecution is required. The information against defendant was filed on March 20 and amended on March 27, 1978. He was charged in count I with having robbed Joe Gonzales on May 23, 1977. It was also alleged in count I, as amended, that during the commission of the robbery he had "personally used a firearm, to wit, a pistol, within the meaning of...Sections 1203.06 and 12022.5," and that he had *four* specified prior felony convictions. The four priors were expressly alleged in count I for the purpose of enhancing a prospective prison sentence for robbery pursuant to section 667.5, subdivision (b).

Defendant was charged in count II with having violated section 12021 in that he had been in possession of a concealable firearm ("to wit, a pistol") on May 23, 1977. By way of charging the past-convicted

---

[1]Statutory references are to the Penal Code except where otherwise indicated.

felon element of this offense, it was alleged in count II that he "theretofore" had *three* of the four prior felony convictions alleged in count I for sentence-enhancement purposes only.

Defendant was arraigned on the amended information on March 27, 1978. At a point not shown in the record, the public defender was appointed to represent him. He was represented at the arraignment, and at all pertinent times thereafter, by the same deputy public defender. He entered pleas of not guilty to both counts, denied the firearm-use allegation, and denied the four prior felony convictions alleged in count I. He admitted those four priors at the outset of a jury trial that commenced on May 17, 1978. The jury was unable to reach a verdict, a mistrial was declared, and the case came on for trial again in July of 1978.

The involvement of defendant's prior felony convictions at the second trial will be recited at a later point in this opinion. The second jury returned verdicts finding him guilty on both counts and that the firearm-use allegation in count I was true. Defendant was sentenced to state prison for the terms prescribed by law. This appeal followed.

### The Evidence

A detailed summary of the evidence is also required. The trial record supports the following recitals:

### The People's Case

Joe Gonzales, the robbery victim named in count I of the amended information, testified that on the afternoon of May 23, 1977, he was working as an attendant in a parking lot located in downtown San Francisco. He saw a man get into a brown Ford Torino on the lot. He approached the vehicle and asked the man for his parking ticket. The man displayed a revolver and demanded money. Gonzales gave him about $40 in currency and coins. The robber warned him not to call the police and drove away in the Ford.

Gonzales immediately hailed officers in a passing police vehicle and gave them a description of the robber and the Ford Torino. He told the officers the robber was a black man wearing a red leather cap, a leather jacket, sunglasses, and a moustache. Gonzales could not identify defendant as the robber at the trial.

San Francisco Police Officers John Hennessy and Raymond Portue received a radioed report of the robbery while they were riding in a police car on the afternoon of May 23, 1977. Officer Portue was driving. Officer Hennessy testified that the report informed them that "a robbery had just taken place, and the suspect who was a black male had escaped in a brown Ford Torino with a partial license plate...which came over as 260, letters unknown."

A few minutes later, while the police vehicle was moving east on Eddy Street, a westbound Ford Torino passed them on the same street. Officer Hennessy observed that its license plate included the numbers "260" and that a black man was driving it. Officer Hennessy made an in-court identification of defendant as the man he saw at that time. He also testified that he then told Officer Portue that the "vehicle was the one involved in the robbery."

Officer Portue made a U-turn, activated the siren on the police car, and pursued the Ford. The officers lost visual contact with the Ford when it turned off Eddy Street during the chase, located it again headed west on Ellis Street, and continued the pursuit. It again disappeared from their view when it turned north into Beideman Alley. It was not in sight when they turned into Beideman Alley behind it.

The siren on the police vehicle was not sounded as the officers drove north on Beideman Alley. When they emerged from that street at its intersection with O'Farrell Street, one block north, they saw the brown Ford Torino parked on O'Farrell Street near the corner. Defendant was standing outside the vehicle and leaning into it through the driver's door, which was open. He was wearing denim pants, a matching jacket, and amber sunglasses.

The officers ordered defendant away from the Torino and placed him under arrest for the robbery. Officer Portue searched the Torino and found a leather cap and a coat matching Gonzales' description of the coat worn by the robber. The officer also found a revolver and $44.75, in currency and coins, inside the coat.

On the day after the robbery, Inspector John Wydler showed Gonzales a photographic lineup consisting of six pictures. One of them was a photograph of defendant. Gonzales could not select a picture of the robber from the lineup, and told Inspector Wydler that "The man is not

here." Gonzales testified at the trial that he "couldn't identify" anyone from the pictures, and that none of them "resembled" the robber.

The arresting officers did not seize defendant's sunglasses because he said that they were prescription glasses and he "needed them to see." They were not received in evidence, but defendant was wearing amber sunglasses at the trial. Gonzales testified that these glasses did not resemble the robber's sunglasses, which had been a "very dark shade" and "not yellow."

The revolver found in the Ford Torino was processed for fingerprints by a police technician. He testified that he had found only one "usable print" on the weapon, that he had compared it with the fingerprints of defendant and of both the arresting officers, and that he had determined that the print had not been left by any of them. He also testified that another technician had been unable to find any fingerprints in the Ford Torino.

### The Defense

Defendant took the stand and testified as follows: On the afternoon of May 23, 1977, he had been driving his own automobile toward a friend's apartment located on Ellis Street at Beideman Alley. His automobile broke down at McAllister and Divisadero Streets, and he continued on foot. He was looking for his friend's car along the street because he had been told not to come to the apartment unless the car was there.

When he did not find his friend's car on Ellis Street, he walked up Beideman Alley to look for it on O'Farrell Street in the next block. When he reached the corner of Beideman Alley and O'Farrell Street, he saw the brown Ford Torino turn the corner and come to a stop on O'Farrell Street. A black man left the vehicle, ran hurriedly across the street, and disappeared.

Defendant walked over to the Torino and saw the leather coat lying on the seat. Finding that the passenger door of the vehicle was locked, he walked around to the driver's door. That door was "ajar," but "not shut." He opened it and leaned into the car with the intention of stealing the coat. He was in that position when the officers turned into O'Farrell Street and arrested him. He denied having committed the

robbery, and testified that he thought he was being arrested for "auto burglary." He denied possession of the revolver or having any knowledge that it was in the Torino.

Defendant's stepson testified that defendant's automobile would not start on occasion, and that he (the witness) had picked it up at McAllister and Divisadero Streets on the evening of May 23, 1977.

### The Prior Convictions

Defendant's claim of ineffective assistance by his court-appointed trial counsel involves the treatment of his prior felony convictions at the trial. We have seen that four priors were alleged in count I of the information, as amended, for the stated purpose of enhancing his prospective robbery sentence pursuant to section 667.5, subdivision (b). In the order alleged in count I, they were (1) a 1957 conviction of robbery in violation of section 211, (2) a 1957 conviction of forgery in violation of section 470, (3) a 1973 conviction of "petty theft with prior felony, a felony, in violation of section 667...," and (4) a 1973 conviction of possession of a controlled substance in violation of Health and Safety Code section 11350.

We have also seen that three of these priors were again alleged in count II as elements of the violation of section 12021 charged in that count. As there alleged in order, they were the 1973 conviction of "petty theft with prior felony...in violation of Penal Code section 667," the 1973 conviction of possession of a controlled substance, and the 1957 robbery conviction.

The allegations of these priors in count II remained there after defendant admitted the four count I priors when his first trial commenced in May of 1978. They were still there, intact, when and after that trial ended in a mistrial. The second trial was subsequently set to commence on July 10, 1978.

On June 22, defense counsel filed a written "Notice Of Motion And Motion To Strike Priors And/Or District Attorney to Elect Prior" (*sic*) to be heard on July 5. The noticed motion was "to strike two of the three felony convictions alleged," in count II, on the grounds that section 12021 required that only one be alleged and that the others were "surplusage" to be "stricken based on remoteness and prejudice in accord with the cases of *People* v. *Beagle* (1972) 6 Cal.3d 441 and *People*

v. *Rist* (1976) 16 Cal.3d 211." It was stated in the last sentence of the notice that "the defendant requests the Court to strike two of the three felony convictions alleged as to Count II in the Information or in the alternative, to require the District Attorney to elect which prior to prove." The notice did not suggest which priors should be stricken.

When the defense motion came on for hearing as noticed, the prosecutor countered with an oral motion for an order striking from count II the passages alleging the 1973 convictions of "petty theft with prior felony," and possession of a controlled substance, but *not* the 1957 robbery conviction. The trial court made a minute order granting this motion, striking the allegations of the two 1973 convictions from count II on the face of the information, and declaring that the defense "[m]otion to strike 2 prior Felony convictions or District Attorney to elect prior, is moot."[2]

Before jury selection commenced on July 10, 1978, and out of the presence of the prospective jurors, the trial court noted that defendant had previously admitted the four priors alleged in count I for sentence-enhancement purposes. Defense counsel then made a *Beagle* motion (*People* v. *Beagle, supra*, 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) for an order preventing the prosecution from impeaching him with any of the four priors if he testified. The prosecutor stipulated that the 1973 controlled-substance conviction and the 1957 convictions of forgery and robbery would not be used for impeachment purposes, but urged the right to impeach with the 1973 conviction of "petty theft with a prior." The court effectively granted the *Beagle* motion as to the first three priors mentioned, but ruled that the fourth could be used for impeachment pursuant to *People* v. *Beagle* and Evidence Code section 352.

The court then noted that the allegations of two priors had been stricken from count II on July 5, 1978. (See the text at fn. 2, *ante.*) The

---

[2]The record does not include a reporter's transcript of these proceedings. As thus amended, count II read in pertinent part: "Count II: The defendant, Bobby Lee Zimmerman, is further accused by the District Attorney..., by this information, of the crime of felony, to wit: Violation of Section 12021 of the California Penal Code, committed as follows: The said defendant, on or about the 23rd day of May, 1977, at...San Francisco,...did willfully and unlawfully have in his possession and under his custody and control a certain firearm, to wit, a pistol, capable of being concealed upon the person, the said defendant having theretofore been duly and legally convicted of a felony, to wit, robbery in the second degree, on the 9th day of April, 1957, by and before the County of Los Angeles [*sic*], in violation of Penal Code section 211." (The carelessly phrased reference to the "County of Los Angeles" obviously meant the superior court of that county.)

jurors were selected and sworn, the clerk read the permissible portions of the information to them, and the trial proceeded. In cross-examining defendant when he testified as summarized above, the prosecutor impeached him with the 1973 conviction of "petty theft with a prior" pursuant to the court's ruling on his *Beagle* motion.

Defendant admitted that conviction, and no reference to his other priors was made in the cross-examination. The *Beagle* motion was thus successful to the extent that it precluded use of the other priors for *impeachment*. The stark fact remained that the jury trying defendant on the count I charge of *robbery* was to be made aware of his conviction of *robbery* in 1957 (21 years past) because it was still a substantive part of the section 12021 violation charged in count II.

The jurors were promptly informed of the 1957 robbery conviction when the clerk read them count II in its current form (quoted in fn. 2, *ante*) at the outset of the trial. The conviction was documented at the close of the People's case in chief, when the prosecutor offered a certified copy of the 1957 judgment of conviction in evidence. The court asked defense counsel if he had "[a]ny objection to that." Counsel replied "No objection," and the certified copy was received.

It is clear that counsel was utterly oblivious to these prospects, and their consequences, when he made his pretrial motion to limit the count II priors and at all times thereafter.[3] The result is a contention by defendant that he was unconstitutionally deprived of the effective assistance of counsel within the meaning of *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859]. The contention must be sustained.

In *Pope*, the Supreme Court abolished the old "farce or sham" standard for establishing ineffective assistance of counsel, and declared that "a conviction may not be upheld if the state has furnished an indigent with representation of lower quality than that of a reasonably competent attorney acting as a diligent, conscientious advocate."[4] (*People* v.

---

[3]Parallel inadvertence or oversight may not be attributed to the prosecutor, whose countering motion to strike the count II priors *except* for the 1957 robbery conviction was obviously calculated.

[4]This standard applies to defendant, who was an indigent being represented by the public defender's office under court appointment. In any event, the court has recently held that the *Pope* standard applies to appointed and retained counsel. (*People* v. *Frierson* (1979) 25 Cal.3d 142, 162 [158 Cal.Rptr. 281, 599 P.2d 587].)

*Pope, supra*, 23 Cal.3d 412 at p. 424.) The court further stated that "'[d]efense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial.'" (*Ibid.* [quoting *Beasley* v. *United States* (6th Cir. 1974) 491 F.2d 687, 696 (26 A.L.R. Fed. 204)].)

Defendant's trial counsel obviously made two key errors which resulted in bringing the prior robbery conviction before the jury. First, although he appropriately raised a pretrial objection to the allegation of three separate priors as part of the section 12021 charge, counsel passively accepted the prosecution's choice to strike the two *least* damaging priors so that the highly prejudicial robbery prior would still be disclosed to the jury. Secondly, once the prosecution had succeeded in persuading the trial court to admit a second felony (the petty theft with a prior) for purposes of impeachment, counsel failed to compel the prosecutor to use this prior *both* to impeach *and* to establish appellant's ex-felon status as an element of the section 12021 charge. Had counsel engaged in diligent research, he would have discovered this court's decision in *People* v. *Morrison* (1977) 67 Cal.App.3d 425 [136 Cal. Rptr. 650], which mandates such procedure in order to minimize unnecessary prejudice to the defendant.[5] *Morrison* imposes a duty on the trial court to follow this procedure. (See fn. 5, *ante.*) Counsel's omissions amounted to a failure to invoke the court's duty.

These omissions cannot satisfactorily be explained on the basis of any knowledgeable choice of tactics. (See *People* v. *Floyd* (1970) 1 Cal.3d 694, 704 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Pope, supra*, 23 Cal.3d 412 at pp. 425-426.) No plausible tactical explanation can be conceived which would justify foregoing two opportunities to re-

---

[5]The defendant in *Morrison* was also on trial for violating section 12021. (67 Cal. App.3d at p. 427.) The trial court, over defense objection, permitted the prosecutor to prove five uncontested prior felony convictions, as part of his case in chief, despite the fact that only one of them could be used for impeachment. We held that this was error, stating: "Both where prior felonies are offered for the purpose of impeachment and where the existence of a prior is an element of the crime charged, it is the responsibility of the trial court to exercise its discretion to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will...create substantial danger of undue prejudice,...' (Evid. Code, § 352.) By analogy to the procedure directed by the Supreme Court in *People* v. *Beagle, supra*, the trial court should have controlled the situation so as to give the prosecutor adequate scope to establish beyond question that there had been a prior conviction and, at the same time, to prevent unnecessary prejudice to the defense by proving *more than one* of the priors." (*Id.*, at p. 428 [italics added].)

move from the jury's consideration the only robbery conviction suffered by a defendant who was about to be tried for robbery. Common sense, as well as the most casual reading of readily available Supreme Court decisions, would have alerted diligent and competent counsel to the inevitably prejudicial consequences where the jury learns of a prior offense which is identical or substantially similar to the crime charged. (See *People* v. *Beagle, supra*, 6 Cal.3d 441 at p. 453; *People* v. *Rist, supra*, 16 Cal.3d 211 at p. 219 [127 Cal.Rptr. 457, 545 P.2d 833] [both of which were cited on defendant's pretrial motion to limit the allegations of priors in count II]. See also *People* v. *Antick* (1975) 15 Cal.3d 79, 97 [123 Cal.Rptr. 475, 539 P.2d 43].)

Defendant has therefore carried his burden of showing that trial counsel "failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People* v. *Pope, supra*, 23 Cal.3d 412 at p. 425.) However, the Supreme Court has declared that a further showing must be made in order to prove a claim of constitutionally ineffective assistance of counsel: i.e., that the claimant "must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*Ibid.*)

The failure to impeach a witness or to object to evidence has generally been held insufficient to establish an unconstitutional impairment of the right to effective counsel. (See *People* v. *Najera* (1972) 8 Cal.3d 504, 516-517 [105 Cal.Rptr. 345, 503 P.2d 1353]; *People* v. *Floyd, supra*, 1 Cal.3d 694 at p. 709; *People* v. *Thomas* (1974) 43 Cal.App.3d 862, 868-869 [118 Cal.Rptr. 226].) The courts have more readily reversed for incompetence where failure to explore a substantive alternative defense is shown. (See, e.g., *People* v. *Frierson, supra*, 25 Cal.3d 142 at pp. 162-164; *People* v. *Corona* (1978) 80 Cal.App.3d 684, 719 [145 Cal.Rptr. 894]; *People* v. *McDowell* (1968) 69 Cal.2d 737, 746-751 [73 Cal.Rptr. 1, 447 P.2d 97].) The *Pope* court nevertheless stated that "[a] crucial defense is not necessarily one which, if presented, 'would result inexorably in a defendant's acquittal.'" (*People* v. *Pope, supra*, 23 Cal.3d 412 at p. 425, fn. 15 [quoting *People* v. *Rodriguez* (1977) 73 Cal.App.3d 1023, 1028 (141 Cal.Rptr. 118)].) Moreover, recent decisions on the subject indicate that tactical acts or omissions which seriously prejudice a defendant's case may constitute the withdrawal of a potentially meritorious "defense."

In *People* v. *Perez* (1978) 83 Cal.App.3d 718 [148 Cal.Rptr. 90], the defendant was on trial for sale of heroin. On direct examination, de-

fense counsel asked the defendant about a prior conviction of the same offense in the mistaken belief that it would have been ruled admissible for impeachment during cross-examination. (*Id.*, at p. 733.) The Court of Appeal held that the "crucial defense" standard had been met because "the crucial issue with respect to defendant's innocence or guilt centered around the respective credibility to be accorded...[the prosecution witness]...contrasted with defendant as a witness" and the prejudicial impact of his prior felony conviction had "effectively destroyed" defendant's credibility. (*Id.*, at p. 735.) The court accordingly concluded that he had been "denied his constitutional right to adequate representation of counsel." (*Ibid.*)

In *People v. Farley* (1979) 90 Cal.App.3d 851 [153 Cal.Rptr. 695], defense counsel moved to suppress an in-court identification on the ground that the pretrial lineup was impermissibly suggestive, but did not ground his motion on the contention that defendant had been involuntarily transported and detained at the police station immediately prior to being identified. (*Id.*, at p. 860.) Despite uncertainty as to whether a properly argued motion would have been successful, the Court of Appeal applied the new *Pope* standard and held that trial counsel's omissions deprived the defendant of "an *adjudication* of a crucial or potentially meritorious defense." (*Id.*, at p. 865 [italics in the original].)

■ Application of these principles compels the conclusion that defendant was deprived of a "potentially meritorious defense" within the meaning of *Pope.* His appeal presents a far stronger basis for reversal than *Farley*, in that counsel here would certainly have prevailed under applicable law if he had made the correct objection or motion. The only real distinction between *Perez* and this case is the fact that the identical prior was introduced in *Perez* by counsel's voluntary act rather than upon his failure to object. The *Pope* decision establishes that it is immaterial whether counsel's incompetence appears in his "acts" *or* his "omissions." (*People v. Pope, supra*, 23 Cal.3d 412 at p. 425.)

The evidence clearly supported the inference that the brown Ford Torino was the automobile in which the robber had driven away from the parking lot. The inference that defendant was the robber was supported by his proximity to the vehicle when the officers overtook it on O'Farrell Street, and by Officer Hennessy's in-court identification of him as the man who was driving it when it passed the police car on Eddy Street before the pursuit began.

On the other hand, the evidence also supported the inference that Officer Hennessy's view of the driver on Eddy Street was a fleeting glimpse at best. Gonzales could not identify defendant as the robber, either from the police photographs or at the trial. The sunglasses worn by the robber did not match the officers' description of the "amber" glasses defendant was wearing when he was arrested. His mere proximity to the Ford Torino at that time was the only element otherwise associating him with the automobile, or the coat and cap found in it, or the money and the handgun found in the coat. Because he testified to an explanation of his presence at the vehicle when the officers arrived, his credibility was literally "crucial" to his defense. Its efficacy to tip the close balance of the evidence[6] in his favor was obviously devastated by the unresisted proof of his 21-year-old conviction of the same crime (robbery) with which he was principally charged.

"'A jury which is made aware of a similar prior conviction will *inevitably* feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged.'" (*People* v. *Fries* (1979) 24 Cal.3d 222, 230 [155 Cal.Rptr. 194, 594 P.2d 19] [quoting *People* v. *Rist, supra*, 16 Cal.3d 211 at p. 219; italics added by the *Fries* court]. See also *People* v. *Coleman* (1979) 89 Cal.App.3d 312, 319 [152 Cal. Rptr. 407]; *People* v. *Banks* (1976) 62 Cal.App.3d 38, 44-45 [132 Cal. Rptr. 751].) The prospect of this consequence was magnified in the present case because, the 1957 prior not having been used for impeachment, the jurors were not instructed that they were to consider it for limited purposes only. (See CALJIC Nos. 2.09, 2.23.) So far as they knew, the undisputed proof of the prior was consequently to be viewed as evidence of past conduct indicating a propensity to commit the crime charged. That result, of course, is expressly forbidden by Evidence Code section 1101, subdivision (b).

The totality of these circumstances demonstrates that trial counsel failed to act in a manner to be expected of a reasonably competent criminal attorney, and that his omissions effectively undermined the entire defense. These conclusions are affirmatively demonstrated by the record on the appeal. We are required to reverse accordingly. (*People* v.

---

[6]The close balance of the evidence is demonstrated by the amount of time two separate juries spent in deliberating. Although the evidence at the second trial was introduced in slightly more than one day, the jury was out for another full day (and through an overnight recess) before the verdicts were returned. The respective intervals were similar at the first trial, which ended in a mistrial when the jury was unable to agree on a verdict after deliberating for a full day.

*Pope, supra*, 23 Cal.3d 412 at pp. 423-426.) In light of this disposition, other contentions advanced by defendant need not be discussed.

The judgment of conviction is reversed.

Christian, J., and Poché, J., concurred.

A petition for a rehearing was denied February 27, 1980.