Filed 11/13/13  P. v. Garcia CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B245221 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA071353) |
| v. | |
| PETER GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lesley C. Green, Judge.  Conditionally reversed and remanded with directions.

Renee Paradis and Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael C. Keller and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Peter Garcia appeals from his conviction of two counts of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). He contends the trial court erred in denying his *Pitchess*[1] motion as to one of the two arresting officers, requiring a defense witness to appear in jail clothing and shackles, instructing the jury on constructive possession and refusing to hear his oral *Romero*[2] motion and motion for a new trial. He further contends he did not properly waive his rights or admit the prior conviction allegations. Appellant also requests we review the in camera proceedings of the *Pitchess* hearing. We remand this matter to permit the trial court to conduct a *Pitchess* hearing for the second officer and, depending on the *Pitchess* ruling, a new sentencing hearing.

## I. FACTS

### A. Prosecution

On August 16, 2011, at 11:45 p.m., Los Angeles Police Department Officer Anthony Lopez and his partner, Officer Melvin Peraza, were driving in their patrol vehicle while on routine patrol in Pacoima, when they saw appellant and Mark Delgado walking in the middle of the street with their backs to the patrol car. The officers drove toward the men, intending to stop them for being pedestrians in the roadway, in violation of the Vehicle Code. As the officers slowed their patrol car, the two men turned, made eye contact with the officers and began walking rapidly into the driveway of appellant's home.

The officers exited their patrol car and ordered appellant and Delgado, who were now running, to stop. The officers saw appellant turn around and look at the officers,

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 allows a defendant to make a motion to dismiss a prior conviction alleged pursuant to the "Three Strikes" law (Pen. Code, § 1170.12, subds. (a)-(e)).

then reach out with his right hand and pass a black object to Delgado, who was about three steps ahead of appellant, and closer to appellant's house.

Based on Delgado's behavior and body language, Officer Lopez thought the object was a gun. Officer Lopez yelled to his partner, "He has a gun, he has a gun, he has a gun." Because of the officers' concern that Delgado had a gun, they drew their weapons, kept their eyes on Delgado's hands, and never lost sight of them.

After appellant gave the object to Delgado, appellant complied with the officers' commands. He put his hands up and said, "I don't have anything." At the same time, Delgado "tried to make a dash" to the house. Officer Peraza took appellant into custody. Officer Lopez pursued Delgado, who ran behind one of the cars parked in appellant's driveway.

Officer Lopez ordered Delgado to raise his hands and drop the "gun." Delgado threw the object up in the air, and it landed a foot or two away from Officer Lopez. Delgado was then taken into custody.

Delgado had thrown two black latex gloves. One of the gloves contained four separate bindles with a useable amount of methamphetamine. A brown glass vial landed approximately one to two feet away from the glove with the methamphetamine. The vial was filled with one milliliter of phencyclidine, also known as "PCP." The liquid in the vial was enough for several doses of PCP.

## B. Defense

Delgado[3] testified that on the evening of August 16, 2011, he went to the home of his relative, Lisa Vargas, to give Diana Cervantes a tattoo. Vargas's house was across the

---

[3] Delgado had convictions for making criminal threats, unlawfully taking and driving a car without the owner's consent, and identity theft. When he testified he was in custody for the identity theft conviction. Delgado was also charged with drug possession in the instant case, but received drug treatment pursuant to Proposition 36, as his sentence. He acknowledged he had "nothing to lose" by saying the drugs in this case were his.

3

street from appellant's house. Delgado brought his tattoo equipment with him. Delgado also brought "one or two" bindles of methamphetamine and had a bottle of PCP in his right pocket.

At Vargas's house, Delgado put black latex gloves on for "sanitation" and was ready to begin the tattoo when he realized that he did not have a necessary power cord. He went across the street to ask appellant if he could borrow a power cord, since appellant was a tattoo artist as well. Delgado kept his gloves on when he left Vargas's house. As Delgado walked across the street, he saw appellant standing in front of his house talking to Joanne Martinez.

Martinez testified she was in the neighborhood that night and decided to stop by appellant's house to talk to him about getting a hummingbird tattoo. She was inside the house for "about 15 to 20 minutes." Appellant walked with her to her car. They continued to discuss the tattoo at her car. During this discussion, Delgado approached them wearing black gloves and asked appellant if he could borrow a power cord for his tattoo equipment. Appellant agreed to let Delgado borrow the cord, and the two walked toward appellant's home.

As they walked toward the house, Delgado noticed a police unit coming down the street with no headlights on. Appellant was "walking pretty fast" when the patrol car came. The officers exited the car with their guns drawn and told Delgado and appellant to put their hands up. Appellant complied. Delgado ran into appellant's driveway, put his hands in his pocket, "grabbed the narcotics and bundled it up in the gloves and threw it" in the driveway between some cars. Appellant never gave Delgado any narcotics that evening.

Cervantes watched the entire incident from inside Vargas's house and did not see appellant hand Delgado anything. The house was approximately 100 yards away, and Cervantes testified if there had been a hand off, she "would have seen it." Cervantes also testified she did not see Delgado throw anything on the ground.

Appellant testified on his own behalf. He acknowledged he had a 2003 conviction for being a felon in possession of a firearm.

On August 16, 2011, while appellant was outside of his home with Delgado, he observed officers exit their vehicle with guns drawn. The officers yelled, "Stop. Freeze." Delgado ran. Appellant "had no reason to run" and complied with the officers' commands. At no time did appellant give Delgado drugs, a black object or any black gloves.

## II. DISCUSSION

### A. *Pitchess* motion

Appellant contends the trial court erred in granting his *Pitchess* motion for only one of the two officers involved in his stop and arrest. We agree.

### 1. Proceedings below

Appellant moved for discovery of the personnel records of Officers Lopez and Peraza on the grounds, inter alia, that they both fabricated evidence of probable cause or made false statements. Specifically, appellant alleged that the arrest report in this matter stated the officers observed appellant hand a black object to Delgado, but appellant never handed anything to Delgado and was never in possession of any drugs.

The court ruled that appellant's motion was overbroad. "I am inclined to grant the in camera inspection as to Officer [Peraza], 38705, only within the last five years as to false statements and fabrication of probable cause." Appellant's counsel replied, "That's fine, Your Honor. [¶] Submitted.

5

## 2. Applicable law

The procedure to obtain peace officer personnel records is set forth in Evidence Code sections 1043 through 1045. "To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue. (§ 1043, subd. (b)(3).) This two-part showing of good cause is a 'relatively low threshold for discovery.' [Citation.]" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019.)

"To show good cause as required by section 1043, defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses." (*Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1024.)

The affidavit filed in support of a *Pitchess* motion must also "describe a factual scenario supporting the claimed officer misconduct." (*Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1024.) In some circumstances, the factual scenario "may consist of a denial of the facts asserted in the police report." (*Id*. at pp. 1024-1025.) Such a denial may establish a reasonable inference that the reporting officer may not have been truthful. (*Id*. at p. 1022.) This is not true for all cases. "What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents. [Citations.]" (*Id.* at p. 1025.) A trial court's denial of a *Pitchess* motion is reviewed for an abuse of discretion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228.)

3.  The trial court erred in failing to grant the motion as to Officer Lopez

Respondent contends the court properly granted the motion only as to Officer Peraza because appellant asserted that statements in the arrest report were fabricated and Officer Peraza was the author of that report.  We do not agree.

The report showed Officer Peraza was claiming that both he and Officer Lopez observed the hand-off.  It reads:  "[M]y partner and I observed [appellant] extend his right hand out and hand a black unknown object to [Delgado]."  The narrative portion of the report concludes by stating, "My partner and I can testify to all content of this report."[4]

The remedy for an erroneous *Pitchess* ruling is a limited remand to the trial court to conduct an in camera review of Officer Lopez's personnel files.  If the trial court finds discoverable materials in the files, it should disclose them to the defense.  Appellant would then have the burden of demonstrating to the trial court "a reasonable probability of a different outcome had the evidence been disclosed."  Should appellant fail to demonstrate prejudice under that standard, the judgment must stand.  (*People v. Gaines* (2009) 46 Cal.4th 172, 182.)

B.  Review of sealed *Pitchess* proceedings.

Appellant requests that this Court conduct an independent review of the in camera proceedings held by the trial court in response to appellant's *Pitchess* motion for discovery of Officer Peraza's personnel records.  The trial court found that there were no discoverable complaints.

When requested to do so, an appellate court can and should independently review the transcript of the trial court's in camera *Pitchess* hearing to determine whether the trial

---

[4] By the time of the *Pitchess* motion, both officers had testified about the hand-off; Officer Peraza at the motion to suppress and Officer Lopez at the preliminary hearing. Both officers later testified about the hand-off at trial.

7

court disclosed all relevant complaints. (*People v. Mooc*, *supra*, 26 Cal.4th at p. 1229.) We have reviewed the transcript of the in camera proceedings and see no error in the trial court's rulings concerning disclosure.

### C. Witness shackling

Appellant contends the trial court erred in refusing to allow defense witness Delgado to testify in civilian clothing and without shackles. Respondent agrees the trial court erred, but contends the error was harmless. Respondent is correct.

### 1. Proceedings below

On the afternoon that Delgado was to testify, appellant's counsel first asked the court to allow Delgado to be dressed in civilian clothing. The prosecutor argued it was against Sheriff's Department policy and asked the court not to go against that policy. The court denied appellant's request, stating: "I am not familiar with the reasons for the Sheriff's policy. [¶] . . . I'm not inclined to go against that policy."

Immediately before Delgado was to testify, appellant's counsel pointed out that Delgado was in handcuffs. He asked the court to order the handcuffs removed. The bailiff said, "He's going to be cuffed, right?" He added, "That's our policy." The court stated, "The court security is up to the Sheriffs and it's no – the jurors are going to know that Mr. Delgado is in custody. . . . . [¶] And given that he will be going back and forth through the courtroom, including by [appellant], I think that it is appropriate for us to abide by the Sheriff's policy. So that's what we'll do."

There is nothing in the record showing violence or other nonconforming conduct by Delgado, and the trial court did not make any finding that Delgado was violent or threatening.

## 2. Applicable law

A defendant or defense witness may not "be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints." (*People v. Duran* (1976) 16 Cal.3d 282, 290.) Without "a record showing of violence or a threat of violence or other nonconforming conduct," the imposition of physical restraints "will be deemed to constitute an abuse of discretion." (*Id*. at p. 291.) Further, a trial court "is obligated to make its *own* determination of the 'manifest need' for the use of such restraint as a security measure in the particular case, and may not rely solely on the judgment of jail or court security personnel in sanctioning the use of such restraints." (*People v. Mar* (2002) 28 Cal.4th 1201, 1218.) "[I]t is the trial court, not law enforcement personnel, that must make the decision an accused be physically restrained in the courtroom. A trial court abuses its discretion if it abdicates this decision-making authority to security personnel or law enforcement." (*People v. Hill* (1998) 17 Cal.4th 800, 841.)

## 3. Erroneous shackling is reviewed under the *Watson*[5] standard

"[T]he prejudicial effect of shackling defense witnesses is less consequential" than shackling the defendant. (*People v. Duran*, *supra*, 16 Cal.3d at p. 288, fn. 4.) Shackling a witness does not affect the presumption of the defendant's innocence, "affect the defendant's decision to take the stand, impede [the defendant's] ability to confer with counsel or otherwise significantly affect trial strategy." (*People v. Ceniceros* (1994) 26 Cal.App.4th 266, 279-280.) Thus, error in shackling a defense witness is evaluated to determine whether it is reasonably probable a result more favorable to appellant would have been reached in the absence of the error. (*Ibid.*, citing *People v. Watson, supra,* 46 Cal.2d at p. 836.)

---

[5] *People v. Watson* (1956) 46 Cal.2d 818, 836.

Even if "knowledge a person is currently incarcerated in prison permits an inference of diminished credibility, that inference is drawn by the jury as soon as they learn the witness is an inmate; the presence of shackles is superfluous to that concern." (*People v. Valenzuela* (1984) 151 Cal.App.3d 180, 194.)

The use of shackles may permit the inference that the witness is dangerous and has probably engaged in violent conduct in the past. However, ""[a]cts of violence . . . generally have little or no direct bearing on honesty and veracity."" (*People v. Fries* (1979) 24 Cal.3d 222, 226, quoting *People v. Rollo* (1977) 20 Cal.3d 109, 118.)


4. The error was harmless


The trial court's decision to order Delgado to remain shackled was based only on Sheriff's Department policy, and so was an abuse of discretion. (*People v. Hernandez* (2011) 51 Cal.4th 733, 744 ["Where it is clear that a heightened security measure was ordered based on a standing practice, the order constitutes an abuse of discretion."].)

Delgado was an inmate and a convicted felon, both of which permitted an inference of diminished credibility. Thus the presence of shackles did not additionally diminish his credibility. (See *People v. Valenzuela, supra,* 151 Cal.App.3d at p. 194; *People v. Fries, supra,* 24 Cal.3d at p. 226.)

Moreover, Delgado's account of the incident was not convincing. He testified that when he saw police officers, he took the drugs out of his pocket, took off his latex gloves, put the drugs in the gloves and threw the bundle away. His decision to take the gloves off while being chased by a police officer with a drawn gun seems questionable, particularly since he claimed the gloves were simply for his tattooing work. Delgado offered no explanation for his unusual action. If anything, his status as an inmate helped this weak testimony by making it more likely that Delgado was the wrongdoer in this case rather than appellant, who had not admitted any guilt, and who was dressed in civilian clothes and not restrained in any manner.

10

In contrast, the testimony of the two officers was consistent and detailed. Both officers explained that they were paying close attention to the black bundle from the time they saw it in appellant's hand through the hand-off to Delgado because they believed the object was a gun.

It is not reasonably probable appellant would have received a more favorable result if Delgado had testified in civilian clothes and without shackles.

### D. CALCRIM No. 2304 explaining constructive possession

Appellant contends there is no evidence to support a theory of constructive possession and so the trial court erred in instructing the jury on that theory. We see no error.

### 1. The instruction

The court instructed the jury on simple possession of a controlled substance using CALCRIM No. 2304. The last two paragraphs of that instruction provided: "Two or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person."

### 2. Applicable law

"'The trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty "to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues." [Citation.] "It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in

11

the record which, if believed by the jury, will support the suggested inference."
[Citations.]'" (*People v. Alexander* (2010) 49 Cal.4th 846, 920-921.)

### 3. There is sufficient evidence to support the jury instruction

Appellant claims the evidence shows only two possible scenarios: (1) appellant actually had the drugs in his possession; or (2) appellant never possessed the drugs and had no idea Delgado had drugs. Appellant contends there is no evidence which would support some sort of "hybrid finding" in which the drugs were in Delgado's sole physical possession but were constructively possessed by appellant. Appellant is mistaken. The "hybrid finding" suggested by appellant is not the only basis on which a constructive possession instruction could properly be given.

Three pieces of evidence support constructive possession: (1) Delgado's guilty plea to possession of the drugs; (2) the officers' testimony that appellant initially physically possessed the drugs and (3) the officers' testimony that appellant handed the drugs off to Delgado. This evidence supports a reasonable inference that the drugs belonged to both men, or to use the language of the instruction, both men "possess[ed] something at the same time." The jury could have concluded appellant gave Delgado appellant's narcotics because appellant observed the police officers approaching. Thus, appellant constructively possessed narcotics that were recovered from Delgado. While the jury was not required to believe this version of events, it is a reasonable one. The trial court did not err in instructing the jury with CALCRIM No. 2304.

### E. Jury Question/Ineffective Assistance of Counsel

Appellant contends he was deprived of his right to effective trial counsel because counsel failed to object to the trial court's response to a jury question concerning constructive possession. He is incorrect.

12

The jury asked the following question: "May we now/have clarification regarding the person's control or right to control the [substances][?] What does it mean to have control without having to actually touch it[?]" The trial court responded by repeating the portion of CALCRIM No. 2304 concerning constructive possession, and referring the jury to that instruction.[6]

In order to demonstrate ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonableness and, but for counsel's error, a different result was reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)

Appellant contends his trial counsel should have objected to the trial court's response and requested the court inform the jury constructive possession was not an issue in the case. As discussed previously, there was sufficient evidence justifying the constructive possession instruction and, therefore, the trial court's response was appropriate. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1015 [trial court is not required to elaborate on properly given instructions].) Any objection would have been futile. Trial counsel is not required to make futile objections (*People v. Price* (1991) 1 Cal.4th 324, 386-388) or advance unmeritorious arguments (*People v. McPeters* (1992) 2 Cal.4th 1148, 1173; *People v. Ochoa* (1998) 19 Cal.4th 353, 427-428). Appellant was not deprived of his right to effective trial counsel.

---

[6] The court stated: "The jury instruction regarding each of the charges indicates that a person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it personally or through another person. [¶] As to the word or other words in here, if you're looking for a specific definition, if there's a term that you're concerned about that is not specifically defined in the instructions, then you just need to apply ordinary, everyday meanings for that term."

13

### F. Stipulation to prior convictions

Appellant contends he did not admit his prior convictions and, even if his comments were interpreted as an admission, such an admission was not intelligent and voluntary in light of the totality of the circumstances.

### 1. Proceedings in the trial court

After the jury indicated it had a verdict, but before they returned to the courtroom, the court and counsel discussed the issue of the prior conviction allegations:

"The Court: [Defense counsel], what do you wish to do with respect to the prior? [¶] [Defense counsel]: There's a stipulation. [¶] The Court: All right. So I can dismiss the jurors? [¶] [Defense counsel]: Yes. [¶] The Court: So the stipulation—[stand-in prosecutor], we bifurcated the prior. So there's a stipulation. [¶] State the stipulation for me. [¶] [Defense counsel]: Okay. We are not technically at that part. [¶] The Court: I understand. [¶] But the stipulation will be as to your waiving jury or it will be as to the prior, if we get there? [¶] [Defense counsel]: As to the priors, if we get there. [¶] The Court: That's your understanding, [prosecutor]? [¶] [Prosecutor]: Yes, your Honor. [¶] The Court: I just need to know if I can dismiss the jurors. [¶] [Defense counsel]: Yeah. [¶] The Court: That's all I need to know. [¶] You've spoken about that with your counsel, [appellant]? [¶] [Appellant]: I believe so. I'm not—what were the priors? [¶] [Defense counsel]: Well, the stipulation is that you agree that you're basically admitting the priors. That's what the stipulation is about. [¶] The Court: All right. [Appellant], just want to be sure that you understand you have a right to have a jury determine the priors; that you were previously in prison; the enhancement and prior strike. You have a right to have a jury make that determination. [¶] Your counsel has indicated you wish to waive jury trial simply on those issues if there's a guilty verdict. If there's not, you don't need to worry about it. But if there is a guilty verdict, you would waive your right to the

14

jury determining those two issues. [¶] Do you agree to that? [¶] [Appellant]: Yes, your Honor."

The jury then returned to the courtroom and gave its verdicts. After the jury was dismissed, the following discussion took place: "The Court: As to the stipulation. [¶] [Defense counsel]: Yes. This is all with the understanding that there could still be a *Romero* filed and the strike could still be struck. He is just admitting that the strike is— [¶] The Court: Correct. We still need to set it for sentencing, as well. Do you want to set it for further date to go over the stipulation? [¶] I will advise you I'm going to— under Penal Code [section] 1166, I'm going to remand [appellant] and exonerate his bond. I don't know if that makes any difference in the date you wish to set. [¶] [Defense counsel]: Well, I would want something about 30 days out so— [¶] The Court: Okay. You want to set sentencing 30 days out? [¶] [Defense counsel]: Yes. [¶] The Court: All right. So for the record, the defendant has stipulated to the strike and to the enhancement—both of the enhancements. And that is [Penal Code sections][7] 1170.12 and 667 and 667.5."

No written stipulation or waiver of rights form was filed. Appellant was eventually sentenced to the middle term, which was doubled because he had a prior conviction under the Three Strikes law (Pen. Code, § 1170.12, subds. (a)-(e)).

2. Applicable law

"[B]efore accepting a criminal defendant's admission of a prior conviction, the trial court must advise the defendant and obtain waivers of (1) the right to a trial to determine the fact of the prior conviction, (2) the right to remain silent, and (3) the right to confront adverse witnesses. (*In re Yurko* (1974) 10 Cal.3d 857, 863.) Proper advisement and waivers of these rights in the record establish a defendant's voluntary and

---

[7] All further statutory references are to the Penal Code.

intelligent admission of the prior conviction.  [Citations.]" (*People v. Mosby* (2004) 33 Cal.4th 353, 356.)

Not all defective advisements require reversal.  There is a difference between silent record cases and incomplete advisement cases.  (*People v. Mosby, supra,* 33 Cal.4th at pp. 361– 364.)  In silent record cases, there is no express advisement and waiver of constitutional rights at all, and so a reviewing court cannot infer that the defendant knowingly and intelligently waived his rights to trial, to remain silent, and to confront witnesses.  (*Id.* at p. 362.)  In incomplete advisement cases, a defendant waives his constitutional rights after being advised of his right to trial on the prior conviction allegation, but not of the related rights to remain silent and to confront witnesses.  (*Id.* at pp. 362-364.)  Reversal is not required "[w]hen, immediately after a jury verdict of guilty, a defendant admits a prior conviction after being advised of and waiving only the right to trial" but "the totality of circumstances surrounding the admission" supports the conclusion that the admission was voluntary and intelligent.  (*Id.* at p. 356.)

Further, a defendant who admits a prior criminal conviction must be advised of the increased sentence which might be imposed.  (*In re Yurko*, *supra*, 10 Cal.3d at p. 864; *People v. Wrice* (1995) 38 Cal.App.4th 767, 770.)  This requirement is a judicially declared rule of criminal procedure, not a constitutional mandate.  (*In re Yurko, supra,* 10 Cal.3d at p. 864; *People v. Wrice, supra,* 38 Cal.App.4th at p. 770.)  When the only error is a failure to advise of the penal consequences of an admission, the error is waived if it is not raised at or before sentencing.  (*People v. Wrice, supra,* 38 Cal.App.4th at p. 770.)

### 3.  Appellant admitted his prior convictions

Defense counsel informed the court that appellant would stipulate to the priors. The court then asked appellant if he spoken to his attorney about the stipulation. Appellant replied, "I believe so."  His counsel then explained that "the stipulation is that you agree that you're basically admitting the priors.  That's what the stipulation is about." The court added that appellant's counsel had indicated that appellant wanted to waive his

right to a jury trial and then asked: "Do you agree to that?" Appellant replied, "Yes, Your Honor." In this context, appellant's answer is most reasonably understood as agreeing that he was waiving his right to a jury trial and admitting his prior convictions.

### 4. Appellant's waiver of his rights was voluntary and intelligent

Appellant was not advised of and did not expressly waive his constitutional rights to confront witnesses and to remain silent. Thus, he concludes his admission was not intelligent and voluntary in light of the totality of the circumstances.

Appellant's incomplete advisement is remarkably similar to the one given in *People v. Mosby, supra*. In *Mosby*, the defendant was advised of his right to a jury trial on the prior conviction allegation immediately after the jury returned a guilty verdict on the substantive offense. He waived that right and admitted the allegation. (*People v. Mosby, supra*, 33 Cal.4th at p. 364.) On appeal, he contended that the trial court committed reversible error by not telling him of his rights to remain silent and confront witnesses. (*Ibid*.) The Court of Appeal rejected that contention, explaining that the circumstances of the trial showed the defendant was aware of his right to remain silent and his right to confront witnesses: during trial, he had exercised his right to remain silent and had confronted witnesses through his counsel. (*Ibid*.)

Here, as in *Mosby*, appellant had just participated in a trial, and the circumstances of that trial show that he was aware of his rights. Appellant's counsel cross-examined the two police officers who testified. There was an extensive discussion during the trial in appellant's presence about which portions of his prior conviction history the People could use to impeach his testimony should he choose to testify. There is nothing in the record to suggest appellant may have been under the impression that a jury trial on his prior convictions would have different constitutional safeguards than a jury trial on the underlying offenses. These circumstances are strong indicators appellant was aware of his right to confront witness and to remain silent. (See *People v. Mosby, supra*, 33 Cal.4th at p. 361 ["the reviewing court must examine the record of 'the entire proceeding' to

17

assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances"].)  In light of the totality of the circumstances, and the factual similarities to *Mosby*, we conclude appellant voluntarily and intelligently admitted his prior convictions.


### 5.  Appellant has waived his claim that he was not advised of the penal consequences of his admission


Although appellant was not expressly advised of the penal consequences of admitting his prior conviction, he was aware of the increased penal consequences before the sentencing hearing in this matter.  On June 21, 2012, after the jury returned its verdict, the court mentioned the stipulation to the priors.  Appellant's counsel replied, "Yes.  This is all with the understanding that there could still be a *Romero* filed and the strike could still be struck."  The People's July 12, 2012 Sentencing Memorandum requested a doubled term for the Three Strikes conviction and also showed a one year enhancement for the prior prison term was possible.  Appellant was granted self-representation on July 18, 2012 and at that time he was allowed 60 days to file a motion to dismiss his prior conviction alleged pursuant to the Three Strikes law.

Appellant was sentenced on September 13, 2012.  "Had the imposition of sentence on the enhancement allegations 'come as a genuine surprise, it would have been a simple matter to bring the issue to the attention of the trial court.'  [Citation.]"  (*People v. Wrice, supra,* 38 Cal.App.4th at p. 771.)  Then, the sentencing court could have determined whether it was reasonably probable appellant would not have admitted the prior convictions if properly advised.  (*Ibid*.)  Appellant was not advised of the penal consequences of his admission before making that admission.  His failure to raise the issue of the lack of an advisement at or before sentencing results in the forfeiture of his appellate claim.  (*People v. Wrice, supra,* 38 Cal.App.4th at p. 771.)

18

## G.  Oral *Romero* motion

Appellant contends the trial court abused its discretion in refusing to consider his oral *Romero* motion.  Respondent contends the court "effectively entertained" the *Romero* motion.  We find any error by the trial court harmless.

### 1.  Proceedings below

On July 18, 2012, after appellant elected to represent himself, he asked for 60 days to prepare and file a *Romero* motion.  Sentencing was set 57 days later, on September 13.  On September 13, appellant filed a motion for a continuance, seeking more time to prepare his *Romero* motion.  At the sentencing hearing that same day, the trial court denied the motion for a continuance on the ground that it was untimely.[8]  The court also explained there was no *Romero* motion on calendar, and that motions were required to be in writing and served on the People.

Appellant asked:  "Could you please hear me verbally, *Romero*.  I ask you, please, to discuss to strike a strike, you know, being – I was out there trying to take care of my kids, my family, you know  I have letters in here from my kids.  I was trying to get the letters together for you, but I was hoping to get a continuance, you know, to have everything in order for you and not, you know, make a mock of your court or anything like that."  The court replied:  "[Appellant], what we're here for is what is in front of me.  I don't have any *Romero* motions.  All of those issues were heard previously.  I have no new motions or information.  So I am going to proceed with sentencing."

---

[8] Appellant does not contend on appeal that the trial court abused its discretion in denying his motion for a continuance.

## 2. Applicable law

A defendant has "the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading, and the court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) A court should also consider the nature and circumstances of appellant's current and prior convictions and the particulars of his background, character and prospects. (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The basis for the trial court's statement that a *Romero* motion must be in writing is unclear. Courts do hear oral *Romero* motions. (See *People v. Clancey* (2013) 56 Cal.4th 562, 570-572 [discussing an oral *Romero* motion].)

## 3. Appellant was not prejudiced by the court's refusal to hear the motion

Respondent contends the court "effectively entertained" the *Romero* motion. While the court did permit appellant to make brief statements about the motion, the court repeatedly stated it was not considering the motion. To the extent respondent relies the court's statement that the issue had been heard previously, that reliance is misplaced. The record does not show any previous rulings on a *Romero* motion. We agree with appellant that the trial court refused to consider his oral *Romero* motion, and erred in so doing. We find the error harmless.

There is no reasonable probability or possibility appellant would have received a more favorable outcome if the trial court had considered the oral *Romero* motion. Appellant had no evidence to support any factual claims that he might make. (See *People v. Carmony, supra*, 33 Cal.4th at p. 375 [court must consider evidence offered by defendant in support of request to strike a conviction].) His argument that he "was out there trying to take care of [his] kids, [his] family" even accepted as true and a mitigating factor, does not outweigh the numerous factors in aggravation. Appellant's criminal

20

record dates back to 1990, when he was convicted of voluntary manslaughter. He was convicted of possession of a controlled substance in 1994 and being a felon in possession of a handgun in 2003. He committed new offenses while on parole for manslaughter and violated probation on a narcotics charge twice. Appellant clearly fell within the spirit of the Three Strikes law. (See *People v. Williams, supra,* 17 Cal.4th at pp. 161-162.)

## H. Oral motion for a new trial

Appellant contends, and respondent agrees, that the trial court erred in concluding that appellant could not make an oral motion for new trial at the sentencing hearing. We agree as well.

### 1. Proceedings below

The trial court refused to hear appellant's motion for a new trial because "these things need to be in writing and . . . . there's service requirements." The court added "There are legal bases you have to have, sir." Appellant replied: "The legal basis is due to incompetent counsel and possible jury misconduct, and if I have the time to investigate and research, I will give you all the necessary . . . ." The court interrupted appellant, telling him "You do not have the legal training and experience to bring some of these motions and to understand the legal basis for these motions." The court added: "At this point it appears to me that these requests are made solely for the purposes of delay." Appellant replied, "It is not for the purpose of delay. It is made for the purpose of attempting to research and give the facts that I needed for the court in order to . . . . substantiate my claim." The court announced its intention to proceed with sentencing, and appellant objected, "If my motion for a new trial is denied, then I object under Penal Code 1202."

21

## 2. Applicable law

Section 1181 provides that the only requirement for making a new trial motion is that it must be made before the pronouncement of judgment. A motion for a new trial may be made orally at the sentencing hearing. (*People v. Braxton* (2004) 34 Cal.4th 798, 807-808.)

"Section 1202 entitles a defendant to a new trial when the trial court has refused to hear or neglected to determine a defendant's motion for a new trial and a reviewing court has properly determined that the defendant suffered actual prejudice as a result. This will occur when, for example, the reviewing court properly determines from the record that the defendant's new trial motion was meritorious as a matter of law, or the record shows that the trial court would have granted the new trial motion and the reviewing court properly determines that the ruling would not have been an abuse of discretion." (*People v. Braxton, supra*, 34 Cal.4th at p. 817.)

"On the other hand, a judgment of conviction may not be reversed and a new trial may not be ordered for a trial court's failure to hear a new trial motion when a reviewing court has properly determined that the defendant suffered no prejudice as a result. This will occur when, for example, the record shows that the trial court would have denied the new trial motion and the reviewing court properly determines that the ruling would not have been an abuse of discretion, or the reviewing court properly determines as a matter of law that the motion lacked merit. [Citations.]" (*People v. Braxton, supra*, 34 Cal.4th at p. 818.)

"In some cases, a trial court's refusal to hear a new trial motion will result in a record from which a reviewing court will be unable to determine with sufficient certainty whether the new trial motion was meritorious as a matter of law or whether the trial court would properly have exercised its discretion in favor of granting or denying the new trial." (*People v. Braxton, supra*, 34 Cal.4th at p. 818.) "[I]f the appellate record does not permit the reviewing court to make this determination, then the reviewing court

normally should remand the matter to the trial court for a belated hearing on the defendant's new trial motion." (*Id*. at p. 820.)

### 3.  The trial court's error in refusing to hear the oral motion was harmless

In his response to the court, appellant identified two bases for his new trial motion. Both are valid grounds for a new trial.  Juror misconduct is a statutory ground for a new trial.  (§ 1181, subds. (2), (3) & (4).)  "Although ineffective assistance of counsel is not one of the statutory grounds for granting a new trial, the issue may nevertheless be asserted as the basis for a motion for new trial." (*People v. Reed* (2010) 183 Cal.App.4th 1137, 1143.)

It is clear from appellant's brief statement, however, that he would not have been able to elaborate on these grounds with substantive argument if the trial court had agreed to hear his oral motion for a new trial.  Appellant qualified his statement of legal bases for a new trial with the statement "if I have the time to investigate and research, I will give you all the necessary . . . ."  He also said he was "attempting to research and give the facts that I needed for the court in order to  . . . . substantiate my claim."  Thus, appellant suffered no prejudice from the trial court's refusal to hear his oral motion for a new trial.

### I.  Prior prison term

Respondent contends the trial court failed to strike or impose the enhancement for appellant's prior prison term pursuant to section 667.5, subdivision (b), and the matter must be remanded to permit the trial court to strike or impose the enhancement. Appellant agrees the trial court did not act, but contends the record shows the prison term "washed out" and, therefore, no enhancement could be imposed.

A trial court must either strike or impose a section 667.5, subdivision (b) enhancement.  If the court fails to do so, the reviewing court must remand the matter to

23

the trial court to exercise its discretion concerning the enhancement.  (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1561-1563.)

An enhancement term may not be imposed under section 667.5 if  a defendant remains "free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended" for a period of five years.  (§ 667.5, subd. (b).)  This is often called the "washing out" period.  (*In re Preston* (2009) 176 Cal.App.4th 1109, 1115-1116.)  "Both prongs of the rule, lack of prison time and no commission of a crime leading to a felony conviction for a five-year period, are needed for the 'washout' rule to apply.  This means that for the prosecutor to prevent application of the 'washout' rule, it must show a defendant either served time in prison or committed a crime leading to a felony conviction within the pertinent five-year period." (*People v. Fielder* (2004) 114 Cal.App.4th 1221, 1229.)

Based on the pre-sentence report, appellant appears correct that there were no disqualifying convictions or prison time for a five-year period.  Appellant's counsel acknowledges, however, that the trial court and the parties may have been in possession of relevant information that is not reflected in the record on appeal.[9]  A remand for the trial court to resolve the issues raised by respondent and appellant is appropriate.

## J.  Proposition 36

In his reply brief, appellant points out that he was convicted of nonviolent drug offenses.  He contends that if it is correct that he had no felony convictions or prison time during the five-year period preceding his arrest in this case, he would be eligible for probation under Proposition 36.

---

[9] Counsel represents in the reply brief that he attempted to contact trial counsel and the author of the presentence report to learn if there was additional information, but was unsuccessful.

Generally "we do not consider an argument first raised in a reply brief, absent a showing why the argument could not have been made earlier. 'For sound policy reasons, we disregard claims raised for the first time in an appellate reply brief where the appellant makes no attempt to show good cause for failing to raise the issue in the opening brief. [Citation.]' [Citation.]" (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1005.) Appellant made no such showing here.

## III.  DISPOSITION

We conditionally reverse the judgment and remand this matter to permit the trial court to (1) stay or strike the section 667.5 prior prison term enhancement and if necessary resentence appellant and (2) conduct an in camera review of Officer Lopez's personnel records. If the trial court's in camera inspection on remand reveals no relevant information, the trial court must reinstate the judgment of conviction and conduct a new sentencing hearing consistent with this opinion. If the inspection reveals relevant information, the trial court must order disclosure, allow appellant an opportunity to demonstrate prejudice, and order a new trial if there is a reasonable probability the outcome would have been different had the information been disclosed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.[*]

We concur:

MOSK, Acting P. J.                              KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.